## Borough of New Brighton *versus* United Presbyterian Church.

1. Under sect. 8, art. 16, of the Constitution of 1874, and the Act of May 24th 1878, the owners of lots are to be compensated for damages sustained by reason of the authorities of any borough changing the grade of a street.

2. It was contended that inasmuch as the proprietor of a borough had laid it out into lots and streets, and the borough had never fixed the grade of a particular street, it was not liable for damages for grading it the first time. *Held*, that a change from the natural grade was a change of grade just as clearly as if changed from a grade previously made by the authorities and was within the meaning of the statute.

3. The statute giving compensation is remedial, and gives damages where before none could be recovered, and should receive a liberal construction to effect its object.

November 17th 1880. Before Mercur, Gordon, Paxson, Trunkey, Sterrett and Green, JJ. Sharswood, C. J., absent.

Error to the Court of Common Pleas of *Beaver county:* Of October and November Term 1880, No. 307.

This was a petition filed November 4th 1878, by the United Presbyterian Church of New Brighton, praying for the appointment of viewers to assess damages sustained by said church to their property abutting on Apple street, in the borough of New Brighton, by reason of the change of the grade of said street by the proper authorities of said borough.

By agreement of the parties, the case was submitted to the court under the Act of April 22d 1874, who filed the following opinion:

| | |
|---|---|
| 96 | 331 |
| 144 | 648 |
| 96 | 331 |
| 150 | 592 |
| 96 | 331 |
| 28 SC | 122 |
| 96 | 331 |
| 31 SC | 475 |
| 96 | 331 |
| 216 | 480 |
| 96 | 331 |
| 35 SC | 509 |

" The court proceeded to the trial of the case,.and having fully heard the evidence adduced by the parties and the arguments of their attorneys, do find the facts to be as follows :—

" 1. The plaintiff was and is the owner of a certain lot of ground in the borough of New Brighton, in the county of Beaver, bound on the northeast 60 feet by Fifth street, on the southeast about 210 feet by Apple street, and on the southwest 60 feet by Fourth street, on which is a brick church, 56 feet in length by 40 feet in width, built about the year 1854, and located 9 feet from the line on Apple street and 38 feet from the line of Fifth street ; said church being at the time of establishing the grade of Apple street, as hereinafter mentioned, and now used as a place of worship by the plaintiff congregation.

" 2. The borough of New Brighton, the defendant corporation, was incorporated by the Act of Assembly approved April 16th 1838, and in 1855, by appropriate proceedings in the Court of Quarter Sessions, became subject to the general borough laws of 1851. That portion of the borough in which is located this church lot was laid out into lots by the then owner, Benjamin Townsend, about the year 1840, and the streets bounding the lot in question opened some time afterwards.

" Commencing on Fourth street, the western boundary of the lot, and passing eastward, the natural surface of the ground rises very rapidly for a distance of about 100 feet, the ascent or grade being about one foot to four. The other or eastern portion of the lot is comparatively level.

" 3. A small cut or excavation had been made on Apple street prior to 1878, but the extent of this was insignificant ; and by whom done does not clearly appear in the evidence, but it would seem it was not done by the borough. The street was so steep as to be impassable by vehicles ; no grade had been established by the borough authorities prior to 1878 on this part of Apple street between Fourth and Fifth streets. On the 27th day of July 1878, the borough authorities established the grade for that part of said Apple street between Fourth and Fifth, which is the alleged cause of the injury complained of, to which grade the plaintiff objected. The minutes of council show that a committee, representing the plaintiff, waited upon them to protest against it. The grade was established, however, by council, by which said Apple street is required to be cut down alongside of said church lot as follows : beginning at the intersection of Fourth street at western line of the lot, the cut is 2 5-10 feet ; at a point 50 feet distant therefrom eastward 8 6-10 feet ; at a point 100 feet distant therefrom 14 6-10 feet ; at a point 150 feet distant therefrom 15 8-10 feet ; at a point 200 feet distant therefrom 13 3-10 feet, and at the line of Fifth street the cut is 9 9-10 feet. The grade of Fifth street is not shown in the evidence, nor does it appear that a grade has ever

[Bor. of New Brighton *v.* United Presb. Church.]

been established thereon; but to make it accessible from its intersection with Apple street, where the cut is 9 9-10 feet, as stated above, will require an average cut of not less than 5 to 6 feet along the eastern end of the church lot. Most of the excavation on Apple street, alongside of this lot, has been done, but considerable yet remains to be done to bring the street to the established grade and to the full width of the street.

" 4. The lot and street are composed of gravel of a character that will readily crumble and move when cut, the evidence showing that such material will not rest at a grade greater than one and a half base to one rise, as that this deepest cut of 15 8-10 feet, if carried up to the line of lot, would cause the gravel to crumble and fall to a distance of 23 feet on to the lot before it would cease moving, and in this way a considerable portion of the natural surface of the lot next the streets would be destroyed and the available size thereof materially reduced, unless the same was protected by sufficient walls. The lot also will be rendered much more inaccessible except at great expense and inconvenience.

" 5. As to the protection of the lot from the injury resulting from the cutting of the street to the grade established, the mode of protection, the character and strength of the wall sufficient for the purpose, and the cost of the same, the witnesses differ widely. It is clearly established, however, by the evidence, that the church building is endangered by the excavation of the street as it now is, and that if the excavation is carried up to the line of the lot, as required by the grade established, the building must necessarily fall unless protected by a strong wall; but a wall of proper strength may be constructed to protect it. The cost of such a wall as would properly protect the building would be about $1900, an amount that would hardly be justified in view of the character of the building itself. To protect the balance of the lot so as to maintain the full surface thereof in the same condition as when the grade was established, would require a further outlay of not less than $500 to $600; a less expense might perhaps suffice, but it would be at the expense of reducing the available surface of the lot by terracing or sloping the same, and the weight of the testimony is that the property would not be as desirable or valuable after it was thus protected as it was before. To take the building down and rebuild it in a manner similar to its present structure, but lowered to the grade of the street as established, would cost from $2200 to $2500, and this would not include the excavation or grading of any portion of the lot except that portion necessary for the site of the building, thus leaving the part of the lot not covered by the building comparatively inaccessible and useless, but in such a case the building thus re-erected would be virtually a new structure, and much more valuable than the present one.

" 6. Turning our attention from the character of the injury and

the cost to the plaintiff of protecting against the same and maintaining the property in suitable condition for its present use and purpose, and seeking to ascertain the amount of damages sustained by plaintiff by a comparison of the market value of the property as it stood unaffected by the change produced by the establishing of the grade on the street and the excavation thereof, with the market value thereof as affected thereby, we find a very wide difference in the testimony of the witnesses. Of the witnesses called by the defendant Butler, Bennett and Corbus speak of the property as worth $1200, putting the lot at $700 to $800, thus leaving the building worth $400 to $500, while the weight of the evidence is that the materials in the building, if taken down, are worth this amount or more. A comparison of the statements of these witnesses with the statements of the other witnesses, both of plaintiff and defendant, render it quite evident that they are for some reason quite mistaken in their estimate of the value of the house as it stood before the grade was established. * * * After a careful consideration of all this conflicting testimony, having a due regard to the means and opportunities of the different witnesses to form correct opinions and furnish reliable data on which to base our judgment, we find the value of the property before the grade was established or any excavation done on the street by the borough authorities, to be $2500, and that having due regard to and making a just allowance for all the advantages which have resulted or seem likely to result to the defendant, we find that the damage which has resulted and which seems likely to result to the plaintiff's property and church lot above described, by reason of the act of the defendant in changing the grade of said street, is the sum of $1500, as of the date of the changing of the grade as aforesaid.

"Such are the facts as determined from the evidence. We next consider the law of the case. That defendant had the right to establish the grade of the street and cause the street to be cut down to the grade, is not and cannot be denied. This right and power the state has conferred by statute, and the power is a reasonable and necessary one, the proper exercise of which is essential to the improvement of the borough and well being of the public. And it may also be taken as established, for it is not a matter for our consideration or determination that the public good demanded the exercise of that power in the manner it was exercised in this case, but the exercise of that power, as the evidence clearly shows, has caused an injury to the plaintiff, and our question is whether this injury is one for which compensation may be claimed and recovered against defendant in this proceeding? what are the legal rights of the plaintiff upon the facts? That plaintiff could not have recovered for the injury complained of prior to the adoption of the new Constitution, is well settled. The well settled interpretation of the provisions of the former Constitu-

tion, requiring compensation to be made or secured in all cases where private property was taken, or applied to public use under the right of eminent domain, whether by the state itself or by any other person or corporation to whom that right has been delegated, was that those provisions did not embrace a case like the present, where there was no actual taking, although the injury consequent upon the acts done frequently amounted to a serious diminution if not a total destruction of the value of the property affected thereby : Green v. Borough of Reading, 9 Wall. 382 ; Philadelphia v. Trenton Railroad Co., 6 Whart. 25 ; O'Conner v. Pittsburgh, 6 Harris 189 ; In re Ridge Street, 5 Casey 391, and many other cases. But the provisions of the present Constitution on this subject differ materially from those of the former.    While the former forbade the taking or application of private property to public use, without just compensation, and declared that the legislature should not invest any corporate body or individual with the privilege of taking private property for public use without requiring compensation to be made or secured to the owner, the present, by the eighth section of the sixteenth article, makes it obligatory upon municipal or other corporations invested with such privilege, to make or secure just compensation, not only for property taken, but for property injured or destroyed by the construction or enlargements of their works, highways or improvements.    Here is an evident purpose to extend the right of compensation to cases not embraced in the corresponding provisions in the former Constitution, to meet and prevent the recurrence of the well-known hardships and injustice that had occurred in many prior cases.    The language used is so broad and comprehensive as to meet every case, and afford full protection to the citizen whenever his right of private property is interfered with and he made to suffer loss by the exercise of the sovereign power of the state for the benefit of the public.

" Such being the manifest purpose of the new Constitution in the changes made in the provisions on this subject, the citizen is entitled to the protection it affords, and has a right to demand compensation whenever he shows he has sustained an injury embraced within that provision.    The plaintiff's claim seems to be clearly embraced therein.    The defendant being invested with the right to take private property for public use, has in the establishment of a grade on an excavation of Apple street caused an injury to the plaintiff's property abutting thereon.    But although the case in this respect be within the spirit and letter of the Constitution, and the plaintiff's right to compensation for the injury clearly declared therein, what are the means provided for enforcing that right? This proceeding is under the act to provide for appointing viewers to assess damages where streets and alleys are changed in grade or location in the several boroughs of the Commonwealth, approved May 24th 1878, and which enacts that in all cases where the

[Bor. of New Brighton *v.* United Presb. Church.]

proper authorities of any borough have or may hereafter change the grade or lines of any street or alley, or in any way alter or enlarge the same, thereby causing damage to the owners of any property abutting thereon, the Court of Common Pleas shall appoint viewers to assess the damages, &c. For the defendant it is claimed that plaintiff's case does not come within this statute, for the reason that the borough had not fixed nor regulated the grade of the street in question by any ordinance or otherwise, nor done any work thereon prior to the passage of the ordinance establishing the grade complained of; that up to that time said street had remained in all respects in the same condition as when dedicated to public use by David Townsend, so that no change was or could be made in the grade of the street by the act of defendant, and as the statute only provided for cases where there has been a change of grade there can be no recovery in this proceeding. We deem this too narrow a construction of this statute. The obvious purpose of the legislature in its enactment was to provide the necessary means for carrying into effect the provisions of the new Constitution above cited, in respect to injuries caused by the act of borough authorities in changing streets or alleys. The terms in which the act is expressed are perhaps not as clear as might have been used; but since the purpose and terms of the Constitution clearly embrace the case, we should, if the language will at all permit, give the statute such an interpretation as will further that purpose, and enable the citizen to avail himself of his constitutional rights, rather than an interpretation which would retard or deprive him of that right. It is true the borough authorities had never fixed any degree of assent or descent to which the street should be brought by excavation for the more convenient use of it by the public, and this is what is understood by establishing the grade as applied to this grade; neither had anything been done upon it by said authorities by way of excavation or otherwise to change or reduce the natural steepness of the grade or ascent, yet we think it would be doing no violence to the meaning of the term 'grade' as used in this statute, to hold that it may properly be applied to this street as indicating its condition with reference to the degree of ascent or descent thereof, as it was prior to the action of the borough authorities determining to what less degree of ascent or descent it should be brought by excavation, and that a change of grade may properly be predicated of the action of those authorities in declaring that a change should be made in the degree of ascent or descent as it then existed and the same reduced. It seems to us the language of this statute may rightly be so understood and that such is the fair and reasonable interpretation of it in view of the provisions of the Constitution and the evident purpose of the statute to give effect to that provision. We are of opinion, therefore, that the plaintiff properly asserted in its petition that the borough authorities had

[Bor. of New Brighton *v.* United Presb. Church.]

changed the grade of Apple street, and that their action in passing the ordinance of July 27th 1878, in reference to the grade and the excavation done in pursuance thereof, was clearly an alteration of that street, and within the superadded clause in the statute, ' or in any way alter or enlarge' any street or alley.    The counsel for the defendant ask us to affirm the proposition contained in their points submitted, viz. :   1.  If the court find as a fact in this case that the proper authorities of the borough of New Brighton at no time prior to the ordinance of July 27th 1878, regulated or fixed the grade of that part of Apple street whereon the plaintiff's property abuts, there can be no recovery of damages in this proceeding ; and 2.  If the court find as a fact that Apple street, where the plaintiff's property abuts thereon, was at the time of the making of said ordinance in the same condition as to grade as when dedicated to public use by David Townsend, and that the borough authorities had neither by work done on the ground, nor by resolution, ordinance or otherwise, fixed any other grade than that complained of in this suit, the plaintiff is not entitled to recover, as change of the grade of a street within the meaning of the Act of 24th May 1878, implies that a different grade had previously been established by the competent authority.

" The facts stated in these points are true, and the propositions of law asked to be affirmed thereof, are the same we have been considering ; but they are here formally stated in order that we may fully comply with the requirements of the statute under which the case had been tried.    We decline to affirm these points, and hold that there is nothing in the facts that will prevent a recovery ; that the plaintiff's case comes within the provisions of the Constitution and of the statute under which the proceedings were instituted, and it is entitled to recover.   We therefore find in favor of the plaintiff $1500 damages as of the date of July 29th 1878, the date of the resolution fixing the grade (and at which time a portion at least of the excavation had been done, the evidence not fixing the time definitely) with interest thereon from that date, $166.50, making $1666.50, and order and direct that this finding and decision be filed by the prothonotary, and notice thereof given forthwith to the parties or their attorneys, and that if no exceptions be filed hereto within thirty days after the service of such notices, that judgment be entered by him on said finding for said sum of $1666.50 in favor of plaintiff, and against defendant, with costs of suit."

To this finding and judgment of the court the defendant filed exceptions, which the court overruled, and entered judgment for the plaintiff for $1666.50.    The borough took this writ and alleged that the court erred in refusing to affirm the points it submitted.

*W. S. Morlan* and *S. B. Wilson,* for plaintiff in error.—Where a street was laid out by the owner of property thirty years ago, and

15 Norris—22

[Bor. of New Brighton *v.* United Presb. Church.]

was dedicated to the use of the public by him and accepted by them, it is a public highway, and purchasers from the original proprietor have no other rights in it than the adjoining owners have in any other street, whether opened according to law or dedicated to the public use by the owner of the soil: Mercer et al. *v.* The Pittsburgh, Fort Wayne and Chicago Railroad Co., 12 Casey 99. And we take it that the purchaser has no other or greater rights as against the public, than the original proprietor had after the dedication.

This is not a taking of property, neither is it an enlargement, as the street is neither widened nor lengthened; the work complained of is changing the grade, and the street in fact was cut down to a six degree grade; but was that such an enlargement as is meant in the Constitution? Was it doing anything more than was contemplated between David Townsend and the public at the time of the dedication should and must necessarily be done to carry out the purpose of the dedication, and for which damages were tacitly waived?

To bring a case within the Act of 1878 there must be a change or alteration in the grade from what it was originally made. Therefore the word grade, when applied to a road, means it has a fixed condition; either naturally or artificially, fit for travel of all kinds, but where it is steep naturally, as to be unfit for travel, it has no grade, and to level it down to a proper degree of elevation is to fix or make a grade, and not to change a grade as claimed by defendant in error.

*Frank Wilson* and *J. R. Harrah*, for defendant in error.—The plaintiff admits that there was no passable highway along the line of defendant's lot until 1878, but merely a place where one could be, and was likely to be constructed. Is the construction of a highway, for injuries resulting from which sect. 8 of the 6th article of the Constitution provides, the mere location and throwing open of a street or road, or does it consist of making such street or road a highway over which the public may pass and repass? If, then, the constructing or building of a highway is to be compensated for, why is the defendant in this case to be deprived of its constitutional right to just compensation for the injury caused by the construction and enlargement of Apple street? As to the remedy provided to carry out this section of the Constitution, the Act of 1878 is evidently framed to that end. It provides not only for a change of grade, but for any alteration or enlargement of a street or alley whereby damage is caused to the owner of property abutting thereon. This street was not only changed in grade, but was in every way altered; thus Fifth Avenue, in the city of Pittsburgh, was altered, when the cathedral was left inaccessible, and this case appears to be within the mischief the Constitution and Act of 1878

[Bor.· of New Brighton *v.* United Presb. Church.]

design to remedy. Even without the Act of 1878 we would not be remediless : City of Reading *v.* Althouse, 12 ·Norris 400. The Act of 1878 should be liberally and beneficially expounded, so as to suppress the mischief and advance the remedy, inasmuch as it seems quite evident that since the Constitution was adopted the maxim " *sic utere tuo ut alienum non lædas,*" applies to the public in at least as full force as to private persons. A borough has now no more right to go on to a public street, no difference how required, and dig a pit in front of a citizen's dwelling without protecting it and paying for injury done, than has an individual.

Mr. Justice MERCUR delivered the opinion of the court, November 26th 1880.

It must be conceded that prior to the Constitution of 1874, the defendant in error would have been remediless ; but art. 16, sect. 8, declares, " Municipal and other corporations and individuals invested with the privilege of taking private property for public use, shall make just compensation for property taken, injured or destroyed by the construction or enlargement of their works, highways or improvements." This section thus gives compensation for property injured in the construction or enlargement of highways. The first section of the Act of May 24th 1878, Pamph. L. 129, gives effect to the Constitution and defines the liabilities of boroughs within this Commonwealth. It provides " where the proper authorities of any borough have, or may hereafter change the grade or lines of any street or alley, or in any way alter or enlarge the same, thereby causing damage to the owner or owners of property abutting thereon, without the consent of such owner, or in case they fail to agree with the owners for the proper compensation for the damages so done," the Court of Common Pleas of the proper county, on application, shall appoint viewers to assess the damages. Under that section damages in this case were assessed. On appeal therefrom trial by jury was waived and the case submitted to the court, and from the finding thereof and judgment thereon this writ of error was taken.

The lot of the defendants does abut on a street, and by reason of a change of the grade thereof by the authorities of the borough the damages have been sustained. Why shall not the owner of the lot be compensated ? It is claimed by the plaintiff in error that, inasmuch as the proprietor of that part of the borough laid it out into lots and streets, and the municipality had not before fixed the grade of this street, it is not liable for damages resulting from grading it the first time. Why not ? The proprietor dedicated the street to public use as the grade then existed. The defendant in error so accepted it, and erected a church edifice on the lot abutting thereon. Whether or when the authorities would change the grade was a matter of conjecture. A change from the natural grade is a

change of grade just as clearly as if changed from a grade previously made by the authorities. It is presumed to have been made for the public benefit; but, as is found, to the injury of private property. There was no provision by which the authorities could have been compelled to establish the grade of a street thus dedicated before the municipality had accepted it or assumed some authority over it. When the borough accepted· it she took it as it then was, in width, line and grade. This statute giving compensation is remedial. It gives damages where before none could be recovered. It should receive a liberal construction to effect its object. The learned judge was entirely right in holding the borough liable.

Judgment affirmed.

Justice PAXSON dissented.