# Richmond

CITY OF RICHMOND V. KINGSLAND LAND CORPORATION.

January 14, 1932.

Present, Campbell, C. J., and Holt, Epes, Hudgins and Browning, JJ.

The opinion states the case.

*James E. Cannon*, for the plaintiff in error.

*David Meade White* and *George Howell*, for the defendant in error.

HOLT, J., delivered the opinion of the court.

This is a condemnation case under the right of eminent domain.

The Kingsland Land Corporation was the owner of three lots designated on a plat, made part of this opinion,* as lots 1, 4 and 8. The city of Richmond wishes to carry Lombardy street north from Broad street, through and under the lines of the Richmond, Fredericksburg and Potomac Railroad. In order to accomplish this it will be necessary, and it is part of the city's plan, to lower the grade of Lombardy street from Broad to the contemplated underpass, which, at the crossing of the street and railroad, is about

---

* See plat page 621.

eighteen feet below grade. About midway from the railroad to Broad street runs an alley parallel with Broad. Down it, from the direction of Bowe street, the length of lot 8, runs a spur or switch track. The work planned will have as a part of it a retaining wall along the east boundary of Lombardy street improved so that there will be no access from this alley to that street going west along lot 8. On the west side of Lombardy street the alley will start from the grade of Lombardy street depressed, and reach the surface grade some distance away. At the intersection of the street and the alley it will be 5.5 feet below grade; at the northeast corner of lot 4 this cut will be 4.6 deep; and at its northwest corner 0.8 of a foot, parallel with the Richmond, Fredericksburg and Potomac tracks and adjoining them on the south runs Railroad avenue. That too will be closed at its Lombardy street crossing.

No grade touching lot 1 is changed, and no street or alley on which it abuts is closed.

The city does not propose actually to take any land, but the Kingsland Company contends that its property will, within the purview of section 58 of our State Constitution, be damaged, and that for damage so suffered just compensation must be made.

Proceedings were first had before the advisory board of the city of Richmond. Its findings were: Lot 1, no damage; lot 4, damage $2,600.00; lot 8, damage $3,750.00.

The damages so assessed were deemed inadequate by the Land Company, which appealed to the Hustings Court of the city of Richmond. That appeal was heard in due course, and in the judgment now under review the damage to lot 8 was fixed at $5,793.00. Damage to lot 4 was assessed at $3,400.00. Nothing was allowed on account of lot 1.

The city's position with respect to lot 8 is that no damage will be inflicted by the closing of the alley at Lombardy

street, or of Railroad avenue at its intersection with that highway, since said lot 8 does not abut on any part of said street or alley which it proposes to close, and because it will still have convenient access in other directions to city streets. *City of Lynchburg* v. *Peters*, 145 Va. 1, 133 S. E. 674; *City of Lynchburg* v. *Peters*, 156 Va. 40, 157 S. E. 769. It further contends that there never was, substantively speaking, any Lombardy street along this lot. Of course, if there was no street, there was no street front. It is further said that if there was a "paper" street, no grade had been established, and that as an original proposition the establishment of a grade along an unimproved street not yet built upon cannot be a source of damages. It is further argued that since there was no Lombardy street along lot 8 the subsequent establishment of one below grade could not give less access than no street at all.

If Lombardy street at grade ever ran along this lot and was used as a public highway, then any change in grade which decreased its value gave to the owner the right to recover to the extent of such diminution. *Swift & Co.* v. *Newport-News*, 105 Va. 108, 52 S. E. 821, 3 L. R. A. (N. S.) 404; *Town of Galax* v. *Waugh*, 143 Va. 213, 129 S. E. 504, 512.

Had this street been in fact established? Owners of adjacent land thought so for they had platted their holdings with reference to it.

Mr. Bowers, assistant director of public works, said: "It is dedicated in part but not physically open to public travel." Mr. Sloan said that "it is not paved but it is practical for use. It can be used and is used." Mr. Bates, a witness for the city, said that it is "very little used. * * * I won't say unopened, but it is an unimproved street of little value in its present condition to this property. * * * It exists as an unimproved street." He also said that he had used it, and that it was used by the Massey Coal Company.

Certainly, it was there open to all who wanted to pass that way. It was unimproved, but was in the same physical condition as is Railroad avenue, now pointed to as giving adequate access to this property.

Had its grade been fixed? Here the land is level and streets at surface grade were to be expected; all others in that vicinity are so placed.

In *Blair* v. *Charleston*, 43 W. Va. 62, 26 S. E. 341, 343, 35 L. R. A. 852, 64 Am. St. Rep. 837, that court, quoting with approval from *New Brighton* v. *United Presby. Church*, 96 Pa. 331, said: "A change from a natural grade is a change of grade just as clearly as if changed from a grade previously made by the authorities."

The director of public works must have thought so, for, doubtless acting under section 30 of the city charter (see Acts 1926, page 563, chapter 318), he referred this matter to the advisory board that it might assess compensation for damages which might be occasioned by any change of grade. That board must have thought that there was a change of grade, for it found that this lot 8 would be damaged to the extent of $3,750.00. In that finding the city then acquiesced, and notified the Land Company to appear and show cause, if any it could, against confirmation. From it that land owner appealed to the Hustings Court of the city of Richmond.

Acting under a joint resolution of its council, approved June 14, 1928, the city acquired by condemnation a twenty foot strip of land lying along the Lombardy street front of this lot—acquired, it will be noted, for the purpose of widening an existing street, which street, according to city plans, was to cross the railroad track at grade. When that land was taken, its value alone was considered. No damage to the residue of the lot was then suggested, and this for the plain reason that it continued to front at grade on Lombardy street as it had theretofore done. Its width was

diminished by twenty feet, but its location with respect to highways on which it abutted remained unaffected, and not until the institution of these proceedings has the court been called upon to consider that matter.

It is perfectly true that it appears from an ordinance or joint resolution of January 18, 1929, which ratified an agreement with the Richmond, Fredericksburg and Potomac Railroad Company, that an underpass was at that date contemplated, but the condemnation noted did not purport to be under it but was under the ordinance of June 14th. In the act of January 18th, this recitation does appear: "The city is first to proceed in accordance with its charter powers to change the grade in said Lombardy street."

From what has been said, we think it appears that Lombardy street was open; that adjoining landowners dealt with it as having been open; and that a grade was fixed and has since been changed. If this change has damaged lot 8, then for that damage just compensation must be made. *Town of Galax* v. *Waugh, supra.*

When we come to fix the damages sustained, we find wide differences in the estimates of witnesses. Mr. Sloan puts them at $23,100.00; Mr. Cabell at $21,000.00; Mr. Wilson at $21,300.00; Mr. Richeson at $22,147.00; and Mr. Brown at $20,205.00. The Sloan, Richeson, Wilson and Brown estimates include damages suffered by reason of the closing of the alley and of Railroad avenue. These elements, under the *Peters Cases*, cannot be considered, and for that reason the trial court properly gave to this evidence no weight.

Mr. Cabell can scarcely be described as an expert witness on land values. Certainly, his knowledge of them in this vicinity rests upon a limited experience, but he does undertake to state those elements which go to make up his total of $21,000.00, and charges to loss of frontage on Lombardy street $17,500.00.

We should bear in mind the character of this lot and the purposes to which it is adapted. It is in a manufacturing district and its value is in a large measure due to its availability as a factory site. It fronts upon a main line railroad, and runs back to an alley on which a switch track has been built. Heretofore it has been treated as fronting on Railroad avenue, and still has unimpeded access at surface grade to highways bounding it on the north, east and south. Therefore, the loss of the use of Lombardy street is far less serious than it would be if this were business or residence property, and so we think Mr. Cabell's estimate is unreasonable.

Mr. Bates thought that by taking twenty feet from its west front to be used in conjunction with a ten-foot strip of unused land now owned by the city, it would be made whole, in that there would be access along its west front to an adequate highway. The twenty feet so taken he values at $5,000.00, but since light and air were by reason of this possible improvement permanently secured, he was of opinion that there should be a deduction of twenty-five per cent, leaving actual net damages at $3,750.00. But this lot had light and air anyway, and so this deduction should not be made. Moreover, it leaves Lombardy street still below grade, and for that some damage should be assessed. Just what that assessment should be, no one can say with certainty, but it is not large.

■ Taking all of these things into consideration, and giving to the judgment of the trial court that consideration to which it is entitled, we are of opinion that error has not been shown.

■ It may be said in passing that evidence of witnesses as to damages suffered is not made incompetent because they undertake to analyze and to state what are its elements. It is perfectly true that the witness must state what the damage as a whole is, how much less this lot is

worth after this change than it was before; but he may say that part of it which fronts on Lombardy street will be less valuable, and how much, and he may say that the Bowe street frontage will not be affected. It is only necessary that after this analysis he give his judgment as a whole.

In *Town of Galax* v. *Waugh, supra,* this court quoted with approval from *Lehigh Valley Coal Co.* v. *Chicago* (C. C.) 26 Fed. 415, as follows: "A partial effect only is not to be considered, but the whole effect; and the effect, not upon any selected part of the property, but upon the whole property. It is, of course, admissible to consider the injury, if any, to a part as affecting the whole, or as showing a damage to the whole; but what I mean is that if a part of the property be benefited or not injured, and a part be injured, you have no right to award damages for injury to the part as disconnected from the remainder, or the part benefited or not injured."

■ It is next said that the court awarded excessive damages to lot 4.

It was of opinion that the damage suffered by it was about five per cent of its market value. That finding is based upon evidence heard by the judge and not by a jury. We cannot interfere with it.

■ Cross-error is assigned because no damages were credited to lot 1.

The court was plainly right. No change was made in any street or alley on which it abuts.

We are of opinion that the judgment appealed from should be affirmed, and it is so ordered.

*Affirmed.*