## CIRCUIT COURT OF SCOTT COUNTY

Elliott Smith and
Phyllis Smith

v.

State Highway and Transportation Comm'r

October 11, 1984

Case No. (Law) 1482

By JUDGE S. W. COLEMAN, III

The State Highway and Transportation Commission of Virginia undertook to improve and modify U. S. Highway 23 near the Virginia-Tennessee state line as part of an interstate project constructing a new highway located primarily in Tennessee. The construction in the vicinity of the property at issue was designed to accommodate the approaches to and from the entrance and exit ramps from the new highway located in Tennessee. Apparently since the new highway would effect the flow of traffic in the immediate vicinity of the property in question, several modifications were made as part of project number 0023-084-116 RW 201, C501, which modifications will be discussed in more detail hereafter. The State Highway and Transportation Commission, as part of the project, took a small parcel of land belonging to the landowner situated on the east side of U. S. Highway 23 and filed condemnation proceedings to determine the fair market value of the land taken and damage, if any, to the residue. The landowners also owned commercial property on the west side of U. S. Highway 23 on which was, and continues to be, operated a restaurant. The restaurant property is the subject of this controversy. The State, contending that no property was taken from the landowners on

the [west] side of U. S. Highway 23, did not include in its eminent domain proceedings any pleadings pertaining to the restaurant property; however, the landowners, contending that the restaurant property was damaged to the point of constituting a taking filed a counterclaim in the eminent domain proceeding seeking damages . for certain modifications made as part of the project.

Procedurally, the court permitted the filing of the counterclaim and has treated the same as an inverse condemnation proceeding. However, in light of the provisions of § 8.01-187 of the Code providing for declaratory judgment by the court as to whether a person's property has been taken or damaged within the meaning of Article I, § 11, of the Constitution of Virginia and compensation not been paid or any action taken to determine the compensation, the court severed the counterclaim in order to receive evidence and make a determination within the contemplation of the statute. The eminent domain proceeding was heard separately and is not effected by these proceedings. On September 7, 1984, the court sitting without a jury received evidence on the issues to be determined by declaratory judgment and is now called upon to determine whether the restaurant property of Elliott Smith and Phyllis Smith was damaged or taken without compensation due to the modifications by the Highway Department within the meaning of Article I, § 11, of the Constitution of Virginia.

As previously noted, the acts complained of by the landowners are not that the State Highway and Transportation Commission took any of the restaurant property. Rather, their allegation is that actions of the condemnor destroyed their reasonable access to their commercial property and failed to provide for an adequate alternative. By resolution adopted January 19, 1978, the Virginia Department of Highways and Transportation designated 0.178 mile of the highway north of the Virginia-Tennessee state line as a limited access highway in accordance with Article IV, Chapter 1, Title 33.1 of the Code of Virginia. Based upon the highway plans submitted to the court and evidence taken, the limited access designation applied only to properties situated on the east side of U. S. Highway 23 and did not apply directly to the subject property or other properties located on the west side of U. S. Highway 23; nevertheless, it appears that the modifications made to the subject property were

an integral part of the design to control and limit access to U. S. Highway 23. Specifically, the landowners complain as follows: (1) a crossover in the median in front of their restaurant, which permitted traffic travelling north on U. S. Highway 23 to enter their business establishment was closed requiring north bound traffic to go approximately one thousand feet in order to enter their property; (2) the intersection of U. S. Highway 23 and secondary route 727, which intersected immediately adjacent to the parking area of the restaurant property, was barricaded as to route 727, preventing traffic to either enter the restaurant parking lot from U. S. Highway 23 or enter onto secondary route 727 and onto their parking lot; (3) a guardrail was constructed between a portion of their property and U. S. Highway 23 entirely upon highway property, preventing access directly from U. S. Highway 23 onto the restaurant parking lot; (4) the access which was left to them immediately adjacent to U. S. Highway 23 consisted of a 25 foot opening in the curb and is not reasonable and is inadequate to serve a restaurant or commercial establishment; and (5) secondary route 727, which is no longer open for through traffic, serves only as an indirect access road and does not provide reasonable access to the restaurant property.

As to whether unreasonable reduction or elimination of direct access, without the actual taking of property is a "taking or damage" within the meaning of Article I, § 11, of the Constitution of Virginia and compensable presents an issue of first impression in Virginia. There is authority that change in grade of a highway without a taking is sufficient to maintain a cause of action for damages. See, *Richmond* v. *Kingsland Corp.*, 157 Va. 619 (1929). With the advent of the interstate highway system, the treatment by courts in dealing with the issue of access to a highway has evoked much litigation and commentary and I commend counsel to 42 A.L.R.3d *Access to Highway* for a discussion of the various approaches taken. Based upon the authority which I have considered it does appear that the owner of abutting land does have a right of access to a highway which "right is a natural easement, and one of the incidents of ownership or occupancy of such land." 42 A.L.R.3d, *supra*, at page 20. The difficulty confronting this court in making a declaration is defining the scope and breadth of the competing interests between the state and private landowners. As indicated, the private

rights of ownership do have as an incident thereto "reasonable access" to their property and the state, in the exercise of its police power, has in the interest of the public the right to control the flow of traffic. As the discussion in 42 A.L.R.3d, *supra*, indicates the two interests are adverse to one another in most instances, but even more so when commercial property is involved, which is normally more adversely effected by the exercise of police power to control traffic flow. The 1983 case of *State Highway Commissioner v. Linsly*, 223 Va. 437, and the line of Virginia cases discussed therein furnish the court with considerable insight as to the approach taken by the Virginia Supreme Court in dealing with the issue of access. It should be noted from the outset that Virginia does recognize in *Linsly* that an abutter's easement of access to a public street is a property right protected by Article I, § 11, of the Virginia Constitution requiring that such right may not be taken for public use without just compensation but that the reduction or limitation of direct access in the exercise of police power to regulate traffic, as distinguished from a complete extinguishment and termination of all the landowner's right of direct access, generally is not compensable. However, as noted in *Linsly* in determining damages to remaining property it was proper to consider the effect on market value of the substitution of indirect access for easements that formerly afforded direct access to the highway. Thus, it would seem clear from *Linsly* that if all direct access were extinguished the landowner has been deprived of a property right and could maintain an inverse condemnation proceeding as provided by statute and the Constitution of Virginia but it is not so clear from *Linsly* as to whether substitution of access constitutes a deprivation of a property right sufficient to maintain an inverse condemnation proceeding. It might be argued that the implication in *Linsly* is that substitution of indirect access is not a deprivation of a property right sufficient to support an inverse condemnation proceeding but only an element that can be considered in determining damage to the remaining property, even if there exists a rational basis to consider that the substituted access was not reasonable. However, Article I, Section 11, of the Virginia Constitution prohibits not only the taking of property without just compensation but also the damaging of property without just compensa-

tion. Thus, following what appears to be the inevitable analogy drawn from *Richmond, supra,* in which merely changing the grade of the highway was deemed to be a compensable damage without an actual taking, and the holding of *Linsly,* the court perceives little difficulty in finding that the *unreasonable* reduction or limitation of direct access or the substitution of indirect access to property for that which formerly had direct access, even though there is no actual taking, may constitute "taking or damage" within the contemplation of Article I, § 11, of the Constitution of Virginia and be the basis to maintain a cause of action, *if there exists sufficient circumstances to determine that the substituted access is not reasonable.* Accordingly, it is the opinion of the court that in this declaratory judgment proceeding the court first must consider the nature of the changes made by the State Highway and Transportation Commission as to the modification or substitution of access in deciding whether a compensable property right has been taken or damaged or whether such modifications or substitutions of access were within the permissible exercise of the police power to regulate the flow and control of traffic.

It has previously been decided and reaffirmed in *Highway Commissioner* v. *Howard,* 213 Va. 731, 195 S.E.2d 880 (1973), that no compensable damage occurs by virtue of the installation of a median strip with no opening at the entrance to the landowner's property. "Circuity of access imposed upon the abutter was an incidental non-compensable inconvenience caused by the lawful exercise of the police power to regulate traffic. The abutting landowner's direct access to the highway, however, was not extinguished." The same result was reached in *Highway Commissioner* v. *Easley,* 215 Va. 197, 207 S.E.2d 870 (1974). I am of the opinion that closing the crossover in the median cannot be considered either a denial of direct access or a circumstance in determining whether the remaining access was reasonable.

The primary inquiries are whether the landowner has been denied direct access to his property and now only has indirect access thereto, or if the changes in access constitute only a reduction or limitation of direct access rather than an extinguishment was such remaining access reasonable. The State argues that the landowner continues to have direct access; the landowner argues that the remaining access is indirect and that any remain-

ing semblance of direct access is totally unreasonable for commercial purposes. In considering whether the landowner does have direct access to the highway, it must be noted that the landowner did previously have direct access from both U. S. Highway 23 and secondary route 727, the latter being a "through street" with free traffic flow. After 727 was barricaded it served only as a service road providing indirect access and no longer could traffic enter directly onto the landowners' property directly from U. S. Highway 23 at its point of intersection with route 727 at the point where the landowners' parking lot immediately abutted. The installation of a guardrail and curbing entirely on State Highway property further restricted direct access to the landowners' property. The only remaining direct access which the landowner has to U. S. Route 23 is a twenty-five foot entrance in the curbing located immediately between the highway and restaurant building and the highway right-of-way. Upon a view of the property by the court, the twenty-five foot entrance in the curbing at the location designated by the State Highway and Transportation Commission does not provide reasonable direct access for traffic to enter the parking facilities of the landowners' property. The entrance in the curbing is located directly beside the restaurant building, which is then so close to the highway right-of-way, that traffic either attempting to enter or exit at this location cannot reasonably do so. The direct access by this entrance for serving commercial property is effectually nonexistent. The court finds that the only access reasonably available for commercial use is by the service road of route 727, which must be entered approximately one thousand feet from the landowners' property. Accordingly, in light of the foregoing findings this court must now more squarely consider the issue addressed in *Linsly* as to whether the substitution of indirect access by a service road is sufficient to maintain a separate cause of action for damage or taking, as distinguished from those cases in which it can be considered as evidence on the issue of whether there has been a diminution in value to the residue. The Supreme Court in *Linsly* at p. 444 acknowledges that there is no unanimity in the authorities and discusses the two views. Having concluded that all meaningful or reasonable direct access to the landowners' property has been effectively extinguished or limited by the erection of a barricade at the

intersection of U. S. Highway 23 and secondary route 727 and the construction of a guardrail and curbing along the abutting land and U. S. Highway 23, which access has been replaced by substituted indirect access by the use of a service road one thousand feet from the property along route 727, it is the opinion of the court that such is damage or taking within the contemplation of Article I, § 11, of the Virginia Constitution, and the trier of fact may find that the substituted access is not reasonable and diminishes the fair market value of the land affected. Assuming *arguendo* that the modifications do not constitute an extinguishment of all reasonable or meaningful direct access, but rather constitute a reduction or limitation of access, generally such would not be compensable. In *Highway Commissioner* v. *Easley*, *supra*, at p. 203, the Supreme Court stated:

> The trial court erred in permitting the Commissioners to consider as an element of damages the reduction in access of the parcels to Route 58. . . an abutting landowner's right of access to a public road is subordinate to the police power of the State reasonably to control the use of streets so as to promote the public health, safety, and welfare. . . . [T]he governing principal is that the owner of property abutting a public road has no right to compensation when the State, in the exercise of its police powers, reasonably regulates the flow of traffic on the highway. And the burden is on him who assails the action of the Commissioner to show that the Commissioner acted unreasonably.
>
> In the present case there was no evidence that the openings in the curbing would not provide the Easleys with reasonable access to Route 58.

As noted above, the court is of the opinion that the remaining direct access consisting of an opening in the curbing is located in a manner that it does not provide reasonable or meaningful access to the landowners' property. Accordingly, the landowners have carried their burden in showing that the action of the Commissioner in providing direct access was unreasonable. It

appears unto the court that the Commissioner has attempted to accomplish indirectly what he desired to avoid by direct action. Rather than declare the west side of U. S. Highway 23 a limited access highway, plans were devised which effectively accomplished that purpose but a mere vestige of direct access was left to the subject property in an apparent effort to avoid the ramifications of extinguishing all rights of access.

Accordingly, in view of the foregoing declaration and the provisions of § 8.01-187 of the Code the parties shall proceed to determine in accordance with the applicable provisions of law the just compensation for the damage to the land and upon failure to do so within sixty days following the entry of a judgment order in accordance with the foregoing declaration, the court will entertain a motion after reasonable notice to the adverse party for the appointment of commissioners to determine compensation.