## Richmond

## POCAHONTAS CONSOLIDATED COLLIERIES CO. INC. V. HAIRSTON.

### January 12, 1915.

1. INSTRUCTIONS—*Directing Verdict—All Material Facts Must be Stated.*—An instruction which concludes with the direction to find for the plaintiff or the defendant must state a complete case and embrace all the elements necessary to support a verdict, and an instruction which undertakes to cover the whole case and to state all the circumstances and conditions necessary to be considered by the jury in arriving at their verdict, and which omits an essential view of the case, is erroneous.

2. MASTER AND SERVANT—*Safe Place—Duty to Inspect—Duty Devolved on Servant—Corporation as Master—General Rules.*—While a corporation owes to its employees the duty to examine and inspect the appliances used by them and the duty is non-assignable, yet corporations, from the necessity of the case, can only act through their agents, and may by general rules impose the duty of inspection upon the employee using the appliance to the extent that he is competent to make the inspection and the circumstances allow him an opportunity of doing so.

3. INSTRUCTIONS—*Master and Servant—Duty to Inspect Appliances—Case at Bar.*—An instruction which tells the jury that it is a non-assignable duty of the master to inspect appliances furnished his servant, and if they believe from the evidence that he failed to do so, and in consequence thereof the plaintiff was injured "without negligence on his part" they must find for the plaintiff, when in fact the duty of inspection had been lawfully devolved upon the plaintiff, is confusing and misleading, and constitutes reversible error. While "without negligence on his part" would cover his failure to inspect, it should have been pointed out to the jury more explicitly that the duty of inspection had, by a general rule of the company, properly promulgated, been devolved upon the plaintiff himself.

4. INSTRUCTIONS—*Interpretation of Rules—Case at Bar.*—An instruction that the plaintiff should be "vigilant and watchful, and use all reasonable and ordinary care to avoid accidents to himself" is a reasonable interpretation of a rule that an employee must "be vigilant and watchful to the full extent of his ability, with a view to avoiding accidents to himself, or injury to persons or damage to property" in an action by an employee against the master to recover for a personal injury.

5. INSTRUCTIONS—*Obscurity—Ambiguity.*—Instructions which are obscure or ambiguous, or for any reason confusing or misleading, should not be given.

6. INSTRUCTIONS—*Defective Statements—Conflicting—Instructions—Verdict Plainly Right.*—Instructions must be read as a whole, and while defects in one instruction may be cured by a correct statement of the law in another, where the court can see that, taking the instructions as a whole, they could not have misled the jury; yet where two instructions are conflicting, the verdict will be set aside, as the court cannot tell by which one the jury were controlled, unless upon the whole case it is clear that no other verdict could properly have been found.

Error to a judgment of the Circuit Court of Tazewell county in an action of trespass on the case. Judgment for the plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*Henry & Graham & Hawthorne,* for the plaintiff in error.

*Wm. H. Werth* and *Hairston & Willis,* for the defendant in error.

KEITH, P., delivered the opinion of the court.

This action was instituted by Hairston to recover damages for injuries received by him while in the employment of the Pocahontas Collieries Company.

Hairston was employed by the Collieries Company to run an electric motor, which conveyed to different parts of the mine operated by the Collieries Company a machine to cut coal. These coal cutters are placed upon trucks with wheels, which convey them from place to place in the entries and rooms of the mines, up to the solid coal, where they are placed in position to saw or undercut the coal seams, preparatory to shooting or blasting the coal down by the miners. The mines are laid off into what are known as "entries" and air courses. The motors for hauling these coal cutters, as well as for conveying out the coal, are run by electricity. There is placed along the main entries a trolley wire, similar to those commonly in use for running electric cars on the surface, and the same appliances are used to conduct and handle the electric current. There are turned off from these main entries, places to excavate coal, commonly called "rooms."

At the time of the accident, plaintiff was working in connection with a man by the name of Pauley. Pauley being absent, the plaintiff took with him on the night of the accident another man by the name of Stovall, to assist him in conveying the coal cutter to the place where coal was to be cut. They went to the place where the motors were found about seven o'clock on the evening of February 2, 1913, and hitched motors No. 21 and No. 22 together and proceeded to room No. 16 on the main entry. On the way they picked up the coal cutting machine and placed it in front of the two motors. The machinery on motor No. 21 was in good condition. Hairston rode on No. 21 and requested Stovall, his helper, to ride on No. 22. These motors weigh six tons each. When they reached the motors Stovall claims to have told Hairston that he had been informed that the brakes on No. 22 were not good, and that Hairston put the current on the motor and tightened up the brakes, and said they were all right. The trolley wire

which connects the motors with the trolley pole does not run into the rooms laid off from the main entry and to supply the electric current into the rooms there is placed on each motor, around a kind of spool or wheel, a cable cord, which is attached to the main trolley wire in the entry by a hook to carry the electric current to the motors as they proceed into the rooms, and this cord is given off the spool as the motor runs. This cord was attached to the rear motor, No. 22, when the motors and the coal cutter were started in room No. 16, where the cutting was to be done. Hairston had worked in this room as a cutter, and knew the grade was steep. In his testimony he puts it at twelve *per cent.;* the estimate by others is about eight *per cent.* There is no complaint made of this grade in plaintiff's declaration as a ground of action, and it appears that Hairston was well acquainted with the situation. It seems that a cable cord cannot be attached to each motor, but to one only, and Hairston undertakes to explain how he put the electric power from the one cord on motor No. 22 to motor No. 21.

The coal cutter was carried to the breast of the coal in room No. 16 and the necessary cutting done. When he went to leave and back out to the main entry, Hairston says the brakes were put on each motor and he put on the electricity to move them. He was on motor No. 21 and Stovall on No. 22. He states that the motors became unmanageable and that he was thrown from motor No. 21 and both his legs cut off by the wheels of the coal cutter. Stovall remained in safety on motor No. 22.

There is evidence tending to show that it was contrary to the practice and the orders of the coal company to use two motors, but on this point there is a conflict of testimony, the plaintiff, Hairston, testifying that the assistant foreman, Jones, "got after them to know why the places were not cut," and that he told Jones, "I haven't got the

power;" that Jones said he wanted the places cut and to put two motors together. As to whether or not Hairston had actual knowledge of the defective condition of the brakes upon motor No. 22 is the subject of contradictory evidence. · When a motor was out of repair, the custom was to mark it conspicuously "shop," or "for shop," and whether or not the motor in question was thus marked is also the subject of contradictory evidence.

The General Assembly of Virginia, at its session of 1912 (Acts 1912, p. 419) passed an act for the government and control of mines, the 22nd section of which, or so much of it as is pertinent to the inquiry before us, is as follows:

"There shall be adopted by the operator of every mine in this State special rules for the government and operation of every mine or mines, covering all the work pertaining thereto in and outside of the same, which, however, shall not be in conflict with. the provisions of the mining laws of this State. Such rules when established shall be printed on cardboard, in the languages spoken by ten or more employees, and shall be posted up in the drum house, tipple or some other conspicuous place about the mines where the same may be seen and observed by all of the employees at such mines, and when said rules are so posted the same shall operate as a notice to all employees at such mine of their acceptance of the contents thereof; and it shall be the duty of each mine operator to furnish a printed copy of said rules to each of his employees when requested by either. or any of them; * * * "

In obedience to this requirement the company adopted Rule 40, which provides, among other things, that "Any person employed as locomotive runner or motorman is required to give his locomotive or motor daily inspection, and must not run it unless he believes it to be in an entirely safe condition for service."

These are the facts which seem to be pertinent to the views which we shall present of this case. Instructions for the plaintiff and defendant having been given by the court, the jury found a verdict for the plaintiff, assessing his damages at $10,000, which the court refused to set aside, and to its judgment a writ of error has been awarded.

The questions of fact which are controverted are as follows:

1. Did plaintiff have constructive knowledge, or such notice as would amount to actual knowledge as matter of law, of the defective brakes?

2. Did plaintiff disobey the rules in using two motors instead of one?

3. Did plaintiff exercise ordinary care under the circumstances?

4. Were defective brakes the proximate cause of the injury?

5. Did plaintiff inspect the motor as he was required under the rule?

All these questions were submitted to the jury upon instructions for plaintiff and defendant which we think correctly propounded the law applicable to the case, with the exception of instruction No. 1, given at the instance of the plaintiff, which is as follows:

"The court instructs the jury that it was the personal duty of the defendant company to exercise ordinary care and diligence to furnish to and provide for the plaintiff reasonably safe brakes with which to operate and brake the motor in question at the time and place in question, and to this end it was equally the duty of the defendant to exercise ordinary care to inspect and examine the brakes and appliances of said motor from time to time to discover and repair defects therein, and that these duties could not be assigned or delegated by the defendant to any of its employees, so as to relieve the defendant of liability for any

failure to perform them, and if the jury believe from the evidence that the said brake was in a defective and unsafe condition, at the time and place when and where plaintiff was required to operate said motor, as alleged in the declaration, and that defendant knew, or by the exercise of ordinary care could and should have known that the said brake on the motor in question was defective and not reasonably safe for the operation of the motor in question over the grade plaintiff was required to run it, and that defendant did not exercise ordinary care to discover and repair said brake, and that plaintiff was thereby injured, without negligence on his part, then the defendant is liable for such injury, and the jury will find for the plaintiff."

This instruction concludes with the direction to the jury to find for the plaintiff, and it is settled law in this State that an instruction which concludes with a direction to find for the plaintiff or the defendant must fully state the case.

In Phillips on Instructions to Juries in Virginia, at section 36, the law on this subject is thus stated: "Where the court undertakes to state a case upon which the plaintiff should recover, it must state a complete case, and embrace all the elements necessary to support a verdict (*Sun Life Assurance Co.* v. *Bailey,* 101 Va. 444, 44 S. E. 692) ; and an instruction which undertakes to cover the whole case and to state all the circumstances and conditions necessary to be considered by the jury in arriving at their verdict, and which omits an essential view of the case, is erroneous.". *Bowles' Case,* 103 Va. 817, 48 S. E. 527; *Wright* v. *Agelasto,* 104 Va. 159, 51 S. E. 191; *Brown* v. *Rice,* 76 Va. 629.

This instruction No. 1 omits any reference to the duty imposed by Rule 40 upon the plaintiff carefully to inspect the motor which he used, and the failure of the plaintiff to perform the duty thus imposed upon him constitutes the chief ground relied upon by the defense.

That a corporation owes to its employees the duty to examine and inspect the appliances used by them, is true, and that this duty is a non-assignable duty is also true, but corporations from the necessity of the case can only act through their agents, and may by general rules impose the duty of inspection upon the employee using the machine or other appliance to the extent that he is competent to make the inspection and the circumstances allow him an opportunity of doing so. See Shearman & Redfield on Neg., sec. 194; *Richmond & Danville Ry. Co.* v. *Dudley,* 90 Va. 304, 18 S. E. 274.

In *Newport News Publishing Co.* v. *Beaumeister,* 104 Va. 744, 52 S. E. 627, it is said, that "The rule that it is the duty of the master to exercise ordinary care to provide the servant with a reasonably safe place in which to work, and to keep it so, does not apply where the injured servant is himself to perform the duty of keeping the place in such condition." *LaCroy* v. *N. Y. L. E. & W. Ry. Co.,* 132 N. Y. 570, 30 N. E. 391; *Chicago & Alton R. Co.* v. *Merriman,* 95 Ill, App. at p. 628, where the law is thus stated: "The duty of inspection may be cast upon the servant by special contract or by general rules or special orders brought home to his notice and giving him reasonable opportunity for compliance, and to the extent to which such investigation is within his reasonable capacity where such duty has been assumed by the servant and he has been negligent in its performance, in consequence of which he is injured, for such injury he cannot recover."

It is true the instruction in question tells the jury that the plaintiff must be "without negligence on his part," and the omission on the part of the plaintiff to make such inspection as Rule 40 required of him was negligence; but if this provision of the instruction be given full effect it is left confusing and misleading to the jury, for they were expressly told in the earlier part of the instruction that it

was the duty of the defendant to inspect, and that this was a non-assignable duty, but the law, as we have seen, per-mits the duty to be imposed by general rules upon the employee also under proper limitations and restrictions, which should have been pointed out to the jury—as, for instance, that the inspection which could be properly imposed upon the employee must be such as was within his reasonable capacity, time, opportunity and other conditions affecting the situation and his relation to its being considered.

By instruction 3 given to the jury by the court, the jury were told that "under the rules of the defendant company proven and admitted in this case, it was the duty of the plaintiff, Manuel Hairston, to make a careful inspection of motor 22 before using it, and to be vigilant and watch-ful and use all reasonable and ordinary care to avoid ac-cidents to himself, and if you believe from the evidence that he failed to make such inspection of said motor as was required by said rules that then you should find for the defendant."

The instruction thus given was a modification of in-struction No. 3, asked for by the defendant. The defendant asked that the jury should be instructed, in accordance with the terms of Rule 40, which provides that the employee must "be vigilant and watchful to the full extent of his ability with a view to avoiding accidents to himself, or injury to persons or damage to property." The instruction as given required that he should be "vigilant and watchful and use all reasonable and ordinary care to avoid accidents to himself," and this we think is a reasonable interpretation of the rule, and the departure from the terms of the rule is not such as to constitute reversible error.

Conceding instruction three, as given, to be correct, and mindful also that all instructions are the instructions of the court and are to be read together, it still remains that between instruction No. 1, given for the plaintiff, and in-

struction No. 3, as given for the defendant, there is an irreconcilable conflict. The jury, under instruction No. 1, might wholly disregard the duty imposed upon Hairston by Rule 40, whereas by instruction No. 3 he was precluded from a recovery if he failed to make due inspection in obedience to that rule.

Instructions which are obscure or ambiguous, or for any reason confusing or misleading should not be given. Phillips on Instructions to Juries, sec. 1, citing numerous cases from this court.

Instructions, as we have said, must be read as a whole and defects in one instruction may be cured by a correct statement of the law in another, where the court can see that taking the instructions as a whole they could not have misled the jury; yet where two instructions are conflicting, the verdict will be set aside, as the court cannot say whether the jury were controlled by the good or the bad in arriving at a conclusion. Phillips, sec. 86, and authorities there cited.

In *Virginia & N. C. Wheel Co.* v. *Chalkley,* 98 Va. 62, 34 S. E. 976, the court, speaking through Judge Buchanan, said: "The fact that another instruction may have correctly stated the law upon the subject does not cure the error. Where two instructions are inconsistent with or contradict each other, it is impossible to say whether the jury was controlled by the one or the other. Neither can the contention be sustained that the error under consideration should be disregarded because upon the whole case it is clear that no other verdict could properly have been found. The evidence is conflicting and this court cannot say that the plaintiff in error was not prejudiced by the erroneous instruction."

That case has been frequently cited with approval, is in accord with our whole current of decision, and is conclusive of this case. That the instructions are inconsistent cannot

be denied, and it is impossible to say by which the jury was controlled. The testimony is, upon numerous questions of fact, contradictory and conflicting, and we cannot say that the plaintiff in error was not prejudiced by the error under consideration because no other verdict could have been found than that which the jury rendered.

Upon the whole case we are of opinion that the judgment of the circuit court must be reversed and a new trial awarded.

*Reversed.*