# Richmond

## STATE HIGHWAY AND TRANSPORTATION COMMISSIONER V. NELLIE S. PARR.

November 24, 1976.

Record No. 751389.

Present, All the Justices.

*Valentine W. Southall, Jr., Assistant Attorney General (Andrew P. Miller, Attorney General; Walter A. McFarlane, Deputy Attorney General; W. Tayloe Murphy, Jr.; Smith and Murphy, on briefs), for plaintiff in error.*

*Alexander F. Dillard, Jr. (Dillard-Hamilton Associates, on brief), for defendant in error.*

POFF, J., delivered the opinion of the court.

On July 30, 1973, condemnor State Highway and Transportation Commissioner of Virginia (then, State Highway Commissioner of Virginia) recorded a certificate of deposit in the sum of $4,380 and, under Code § 33.1-119 (Repl. Vol. 1976) acquired title to 0.44 acre of land fronting on State Route 627, a portion of a tract of 12.1 acres owned by condemnee, Nellie S. Parr, subject to the curtesy right of her husband. Pursuant to condemnor's petition filed July 5, 1974, commissioners viewed the property on April 30, 1975 and heard testimonial evidence.

The evidence shows that condemnee's husband had used the property for some 17 years for storage and maintenance of earth-moving equipment employed in the heavy construction business. The two expert witnesses agreed that this constituted the highest and best use of the property. Before the take, there was an area of 28,000 square feet adjacent to the highway which was level enough to accommodate the equipment. The take reduced the level area to 9,000 square feet.

Condemnor's expert witness, J. C. Miller, appraised the 12.1-acre tract at $2,000 per acre and fixed the value of the take at $880. The take restricted the maneuver room in front of a metal garage, one of three buildings located on the residue, and the elevated grade of the new highway caused surface water to drain into the garage. Miller estimated damages to the garage at $2,155 but felt that there was no damage to the other two buildings or to the residue of the land itself. Asked on cross-examination if he had observed that "since the take Mr. Parr has brought in considerable dirt and put it there behind those buildings", and whether he had considered "the price of any fill dirt", Miller said that he was aware of the fill but had not considered the cost in appraising damages.

Condemnee's expert witness, J. B. Call, agreed with Miller's appraisal of the tract and the value of the take. He fixed damage to the garage at $2,341 and estimated other damages to the residue at $9,250. Explaining the latter estimate, Call discussed the reduction in level area and its effects on the utility of the residue and testified:

"In order to recapture the 19,000 square feet of area, this whole parcel generally slanted to the rear, it was necessary, probably, to haul dirt in behind these buildings over an area of approximately 19,000 square feet and stabilize it and pack it down so that this equipment could be put on that land. I have an estimate - -"

At this point, condemnor interrupted the testimony and objected on the ground that evidence concerning the cost of replacing the level area by filling and stabilizing the residue was inadmissible. The trial court sustained the objection, and no further evidence of this nature was introduced.

The commissioners reported an award of $8,768, consisting of $880 for the take and $7,888 for damages to the residue. The trial

court overruled condemnor's exceptions and, by order entered July 23, 1975, confirmed the award.

Over condemnor's objection, the trial court granted condemnee's Instruction 15 which read:

"In arriving at the damages to the residue of the tract, the Commissioners should consider the reasonable costs, if any, of adjusting the residue of the property to the new conditions, and the inconvenience, if any, to which landowner will be subjected in the future operation of his property caused by the taking and the new construction."

Condemnor argues that the costs of replacing the level area was not a proper measure of damages to the residue; that the trial court correctly excluded evidence of such costs; and that insofar as Instruction 15 authorized the commissioners to consider costs of "adjusting the residue of the property to the new conditions", the instruction constituted prejudicial error.

The inconvenience resulting from the take and certain expenses necessary to adjust the residue to the new conditions created by the take are relevant considerations. *Long* v. *Shirley,* 177 Va. 401, 414-15, 14 S.E.2d 375, 381 (1941). But "such cost is not the measure of damages and cannot be recovered specifically"; it is merely "a factor of evaluation". *Dressler* v. *City of Covington,* 208 Va. 520, 522, 158 S.E.2d 660, 662 (1968). Nor is the sum of all "adjustment expenses" the proper measure of damages. *Swift & Co.* v. *Newport News,* 105 Va. 108, 125, 52 S.E. 821, 827 (1906). "The true test of damages to the residue of the land not taken is the difference in value before and immediately after the taking", *Appalachian Power Co.* v. *Anderson,* 212 Va. 705, 708, 187 S.E.2d 148, 152 (1972), less any enhancement resulting from the take.

Were the rule otherwise, a landowner would be entitled to recover the cost of restoring the residue to the pre-take posture of the entire tract, no matter how great that cost. The application of such a rule could lead to absurd results. For example, if the take should acquire all of the usable portion of a tract and the residue consisted of a vertical cliff or a bottomless pit, the cost of restoration could exceed the post-take value of the residue and possibly the pre-take value of the entire tract. Indeed, the measure of recoverable damages would be open-ended. Under Art. I, § 11, Constitution of Virginia, a

landowner is entitled to "just compensation", but not to bonus compensation.

When applied to a case involving "adjustment expenses", the language of Instruction 15 is a correct statement of the law. *Long* v. *Shirley, supra.* When applied to a case involving "replacement expenses", it can be fatally misleading. This is because adjustment expenses are relevant factors in determining the diminution in the fair market value of the residue while replacement expenses are not. Evidence of the cost of acquiring land adjacent to the residue to replace the land acquired in the take is not admissible, for to allow a recovery of such costs in addition to compensation for the take would be to compensate the landowner twice. *See generally* 27 Am.Jur.2d *Eminent Domain* § 314 (1966). For the same reason, testimony concerning the costs of constructing a new store building on the residue to replace one acquired by the take is not competent. *Staunton* v. *Aldhizer*, 211 Va. 658, 179 S.E.2d 485 (1971). While, under different circumstances, the costs of a fill might constitute adjustment expenses, under the circumstances here the costs of filling and stabilizing the residue to replace the level area acquired by the take constituted replacement expenses, and the trial court correctly excluded evidence with respect thereto.

Condemnee argues that evidence of damages to the garage and evidence of the inconvenience occasioned by the take was sufficient to justify the instruction and to support the award of damages to the residue. We disagree. The size of the award indicates that it was based, at least in major part, upon replacement expenses. Miller testified that the fill had been made following the take. The commissioners observed the fill on view. Instruction 15 told the commissioners that they could consider the costs "of adjusting the residue of the property to the new conditions". The commissioners, unfamiliar with the legal distinction between "adjustment expenses" and "replacement expenses", were understandably led to believe that they were authorized to award damages for the costs of the fill. Absent testimonial evidence of those costs, they naturally assumed that they were free to make and apply their own subjective estimate. Accordingly, we are of opinion that their award was based upon erroneous principles.

The judgment confirming the award is set aside, and the cause is remanded for a new trial.

*Reversed and remanded.*