## Richmond

### State Highway and Transportation Commissioner of Virginia

### v.

### Calvin Percy Allmond, Et Al.

August 30, 1979.

Record No. 771779.

Present: All the Justices.

J. *Westwood Smithers, Jr.* (*Marshall Coleman, Attorney General; Walter A. McFarlane, Deputy Attorney General; Valentine W. Southall, Jr., Assistant Attorney General; Rodham T. Delk; Delk and Barlow,* on briefs), for appellant.
H. *Woodrow Crook, Jr.,* for appellees.

COCHRAN, J., delivered the opinion of the Court.

On April 20, 1973, the State Highway Commissioner (now the State Highway and Transportation Commissioner of Virginia), exercising the right of eminent domain, recorded a certificate of deposit under the provisions of Title 33.1, Chapter 1, Article 7 of the 1950 Code, as amended, in the sum of $134 and thereby acquired title to certain property of Calvin Percy Allmond and Oretha Eley Allmond in the town of Smithfield. A condemnation petition was filed in 1975, and on March 30, 1977, commissioners viewed the property, heard evidence, and filed their report fixing the value of the land and easements taken at $161, and damage to the residue of the land of the Allmonds, beyond the enhancement in value to such residue, at $7,500. By final order entered on August 31, 1977, the trial court overruled the Commissioner's exceptions to the report of the condemnation commissioners and confirmed the report. On appeal, the principal question raised by the Commissioner is whether the award for damage to the residue of the Allmond land was based upon inadmissible evidence and an incorrect instruction.

The Allmonds operated a service station and fuel oil distributorship on a lot containing 8,549 square feet, 0.196 of an acre, that fronted 39 feet on the southern side of Route 258, and extended back between side lines of 204 feet each to a rear line of 45 feet. For the purpose of improving Route 258 the Commissioner acquired fee simple title to 536 square feet, 0.012 of an acre, comprising a strip across the entire front of the Allmond lot, together with a public utility easement 15 feet wide to replace a similar easement across the land taken. The

Allmond lot contained a two-pump island for the sale of gasoline, one 10,000-gallon tank above the ground, two underground tanks of 3,000 and 4,000 gallon capacity, respectively, a one-story frame and tin building, and several miscellaneous outbuildings. There were no improvements on the land acquired in the condemnation.

Palmer Reynolds, who had unsuccessfully negotiated with the Allmonds on behalf of the Commissioner for purchase of the property, testified that, prior to its acquisition, the lot was bounded by a traffic island in the highway which blocked the entire frontage of the property except for an entrance approximately six feet in width at the extreme western end. Reynolds said that a tank truck could not have entered the Allmond property without running over the pump island, and that the usual means of access was, in fact, across adjoining lands with the consent of the owners thereof and not by right of easement. As part of the highway project for which the Allmond property was acquired, the traffic island was removed and an entrance 30 feet in width on Route 258 was provided for the residue of the land.

R. S. Copeland, an appraiser employed by the Commissioner, testified that the highest and best use of the Allmond land was commercial, and that, based upon comparable sales in the area, he valued the land at 30 cents per square foot or $161 for the 536 square feet taken for highway improvement. In his opinion, there was no damage to the residue resulting from the acquisition, particularly in view of the improved access provided, which "[i]f anything . . . is a benefit to" the property. Copeland asserted that "cost of cure", which he said was "a method of curing damage when damages do, in fact, exist", cannot exceed the amount of the damage. Having found no damage to the residue of the Allmonds' land, he had no evidence to present on this subject.

Allmond testified that the project, notwithstanding the wider entrance it afforded, denied customers access to one side of the pump island, and it was necessary to move the gas pumps back 10 or 15 feet to utilize them fully. This relocation, he maintained, would necessitate moving the service station building and the storage tanks. As further evidence that the Allmonds were in the business of selling gasoline, H. D. Butler, a distributor, testified that they purchased from him 16,000 gallons of gasoline in 1969, 13,000 gallons in 1970, 11,599 gallons in 1971, and 6,600 gallons in 1972.

Over the Commissioner's objection, William F. Blair, an executive of an oil equipment sales and service company, estimated that it would cost $5,656 to relocate the Allmonds' tanks and pumps. A building contractor testified, over the Commissioner's objection, that

it would cost $8,400 to move the building back 10 feet and bring it into compliance with the local building code by rewiring and otherwise modernizing it. In his opinion, the value of the building, as it then stood prior to relocation, was approximately $4,500 to $4,700. It is apparent that the effect of relocating the building would be to provide the Allmonds with a more valuable improvement than they previously owned. No evidence was adduced by the Allmonds as to the value of the land taken or as to any damage to the residue measured by the difference in value before and after the acquisition.

Copeland, recalled as a rebuttal witness by the Commissioner, testified that the fair market value of the service station building, based upon replacement cost less depreciation, was $2,604.

Over the Commissioner's objection, the trial court gave the following instruction:

## "INSTRUCTION NO. 15

"In arriving at the damages to the residue of the tract, the Commissioners should consider the reasonable costs, if any, of adjusting the residue of the property to the new conditions, and the inconvenience, if any, to which the landowners will be subjected in the future operation of their property caused by the taking and the new construction."

In argument before the condemnation commissioners, counsel for the Allmonds urged that an award for damages to the residue be made in the amount of the costs required to relocate the pumps, tanks and building. It is the position of the Commissioner that evidence of such costs was improperly admitted in the absence of evidence: (1) that there was damage to the residue measured by the difference between the fair market values before and after the taking; (2) that the adjustment will diminish the damage; and (3) that the cost of adjustment does not exceed the difference between the values of the residue before and after the take.[1] The Commissioner further contends that the trial court erred in granting Instruction No. 15 because it was supported only by the evidence of relocation costs which was improperly admitted.

■ We have recently restated the principles applicable in the measurement of damages in condemnation proceedings in *State High-*

---

[1] It must be noted that (2) and (3) are mutually inconsistent. Under (2) the adjustment cost must diminish the damage; under (3) the adjustment cost may equal but not exceed the damage.

*way Commissioner* v. *Parr,* 217 Va. 522, 524, 230 S.E.2d 253, 255 (1976), as follows:

> "The inconvenience resulting from the take and certain expenses necessary to adjust the residue to the new conditions created by the take are relevant considerations. *Long* v. *Shirley,* 177 Va. 401, 414-15, 14 S.E.2d 375, 381 (1941). But 'such cost is not the measure of damages and cannot be recovered specifically'; it is merely 'a factor of evaluation'. *Dressler* v. *City of Covington,* 208 Va. 520, 522, 158 S.E.2d 660, 662 (1968). Nor is the sum of all 'adjustment expenses' the proper measure of damages. *Swift & Co.* v. *Newport News,* 105 Va. 108, 125, 52 S.E. 821, 827 (1906). 'The true test of damages to the residue of the land not taken is the difference in value before and immediately after the taking', *Appalachian Power Co.* v. *Anderson,* 212 Va. 705, 708, 187 S.E.2d 148, 152 (1972), less any enhancement resulting from the take.
>
> "Were the rule otherwise, a landowner would be entitled to recover the cost of restoring the residue to the pre-take posture of the entire tract, no matter how great that cost. The application of such a rule could lead to absurd results. For example, if the take should acquire all of the usable portion of a tract and the residue consisted of a vertical cliff or a bottomless pit, the cost of restoration could exceed the post-take value of the residue and possibly the pre-take value of the entire tract. Indeed, the measure of recoverable damages would be open-ended. Under Art. I, § 11, Constitution of Virginia, a landowner is entitled to 'just compensation', but not to bonus compensation."

In *Parr* we held that replacement costs could not be considered in determining damages to the residue, and that the trial court properly excluded evidence as to such costs. We reasoned that since the award for the property acquired included the value of the improvements thereon, the landowner was not entitled to recover for these improvements a second time by having the commissioners consider replacement costs in determining the damage award. Therefore, we held that the trial court committed prejudicial error in granting an instruction on adjustment costs, virtually identical to Instruction No. 15 in the present case, when there was no evidence of such costs. Such an instruction, we said, while appropriate where there was evidence that adjustment expenditures were required, should not be given where only replacement costs were involved. *Id.* at 525, 230 S.E.2d at 255-56. *See Staunton* v. *Aldhizer,* 211 Va. 658, 179 S.E.2d 485 (1971).

In the present case, the trial court correctly instructed the commissioners as to the manner in which damage to the residue should be determined.[2] Moreover, the commissioners were given the usual instruction that they might base their findings upon facts obtained by their view of the property, provided their award bore a reasonable relationship to the view, the testimonial evidence and the exhibits.[3]

The damage award fixed by the commissioners, while substantially less than the aggregate amount of the adjustment expenses in evidence, exceeded the value, according to the testimonial evidence, not only of the improvements but of the entire residue of the property, including the improvements. Copeland's appraisal of the land at 30 cents per square foot, the only estimate of land value in evidence, gives a total value of $2,403.90 for the residue of 8,013 square feet. The highest

---

[2] "INSTRUCTION NO. 7"

"The commissioners are instructed that in determining whether there is any damage to the remaining lands of the owner by reason of the taking of the lands or interest therein described in the petition, the test is the difference in the value immediately before and immediately after the taking, considering every circumstance, present and future, which affects its value. Remote and speculative profits and advantages, however, are not to be considered."

"INSTRUCTION NO. 8

"The commissioners are instructed that the burden is upon the owner of the property condemned to prove by a preponderance of the evidence that there has been damage to the residue of his property. On the other hand, the burden of proof to establish any enhancement in the market value to the remaining property by reason of the construction or improvement is upon the State Highway Commissioner."

"INSTRUCTION NO. 9

"The commissioners are instructed that if they believe from their view of the land and from the evidence before them that there is any enhancement in the market value of the owner's remaining property by reason of the construction or improvement contemplated or made by the State Highway Commissioner, then the commissioners must offset the amount of such enhanced value against the damages, if any, resulting to such remaining property of the owner by reason of such consideration and improvement; provided such enhancement in value shall not be offset against the value of the land taken."

[3] "INSTRUCTION NO. 12

"The Court instructs the commissioners that they are not bound by the opinions of the expert witnesses as to the value of land or damages, nor by the apparent weight of evidence, but you may base your findings upon facts obtained by your own view of the property. This does not mean, however, that you are to be turned loose to take arbitrary action and render an award not related to the value or to the evidence.

"Your award must bear a reasonable relationship to the view, the testimonial evidence and exhibits presented by the parties."

estimate of the value of the building was Clark's approximation of $4,700. There was no evidence that the pumps and tanks had any value. Hence, as the trial court noted in its opinion of July 11, 1977, the total value of the building and the residue of the land, according to the testimonial evidence, was $7,103.90.

Since the test of damages to the residue is the difference in values immediately before and immediately after the taking, it follows that there can be no recovery in excess of that difference. Evidence of adjustment expenditures is admissible not as a measure of damages but as an aid to the condemnation commissioners in their determination of the market values before and after the taking. *Bradshaw* v. *Highway Commissioner,* 210 Va. 66, 69, 168 S.E.2d 129, 131 (1969). *See State Highway Commissioner* v. *Parr, supra,* 217 Va. at 525, 230 S.E.2d at 256. Thus, in *Bradshaw,* such "cost to cure" evidence was adduced by the Commissioner to diminish damages.

Although it is apparent, as the testimonial evidence in the present case indicates, that adjustment expenses may exceed the total pre-take value of the residue, there can be no recovery of damages in excess of such pre-take value. Expressed another way, adjustment expenses which may exceed the pre-take value, may be considered as evidence bearing upon diminution in value, but the diminution can never exceed the pre-take value. Although the logic of this principle is unassailable, condemnation commissioners, unless carefully instructed, are likely to be misled into making an excessive damage award in a case where adjustment costs exceed the total pre-take value of the property. In such cases the condemnation commissioners should be instructed that the Commissioner cannot be required to pay in damages more than the pre-take value of the property damaged. Indeed, under Code § 33.1-91, the Commissioner is authorized to acquire, within specified limitations as to acreage, the residue of lands when, in his opinion, damage thereto will approximate or equal its fair market value.

In the present case, the commissioners fixed the damage to the residue of the property at $7,500 although the total pre-take value of the residue, according to the evidence, was only $7,103.90. Hence, while it is possible that the commissioners determined from their view that the pre-take value of the residue was greater than $7,103.90, it appears more likely that the commissioners were confused by the instructions and believed that adjustment costs could be considered as independent items of damages and that such costs could be allowed in excess of the difference between values before and after the taking.

We have frequently held that the giving of instructions which are

confusing or which tend to mislead the jury because of ambiguity or for any other reason is reversible error. *Flanagan* v. *Harvey,* 160 Va. 214, 168 S.E. 448 (1933); *Scott's Ex'or* v. *Chesterman,* 117 Va. 584, 85 S.E. 502 (1915); *Pocahontas Col. Co.* v. *Hairston,* 117 Va. 118, 83 S.E. 1041 (1915).

As we believe that Instruction No. 15 in the present case was not sufficiently explicit to prevent confusion, we hold that the judgment of the trial court must be set aside and the case remanded for a new trial. Upon retrial, the commissioners should be clearly instructed that adjustment costs are not to be considered as items of damages but only as an aid in determining diminution in market value, which is the true measure of damages to the residue. It should also be made clear to the commissioners that their damage award may in no case exceed the difference between the pre-take and post-take values of the residue, regardless of the total amount of adjustment costs.

*Reversed and remanded.*