## Richmond

STATE HIGHWAY AND TRANSPORTATION
COMMISSIONER OF VIRGINIA

V.

JOHN H. LINSLY, ET AL.

April 30, 1982.

Record No. 800774.

Present: All the Justices.

438

*D. Brian Costello (Marshall Coleman, Attorney General; Walter A. McFarlane, Deputy Attorney General; Marshall L. Haney,* on brief), for appellant.

*Robert M. Rolfe (George M. Trible, III; Hunton & Williams,* on brief), for appellees.

COCHRAN, J., delivered the opinion of the Court.

The State Highway and Transportation Commissioner, in the exercise of the right of eminent domain, acquired from John H. Linsly and Jean B. Linsly title to certain land and easements required to convert part of an existing highway into a limited access highway.[1] Under Code § 33.1-59, when the State Highway Commission designates any part of an existing highway as a limited access highway the Commission is required, where necessary, to "extinguish all existing easements of access, light or air."

In his condemnation petition filed in the trial court, the Commissioner asked for the appointment of commissioners to determine the value of the land and easements taken, and the damage, if any, to the residue, over any enhancement in value.[2] The petition described by metes and bounds and by attached plat a parcel of 0.48 acre, more or less, and easements of access, light or air of the same parcel as incident to the lands of the landowners abutting upon the proposed limited access highway. The parcel of 0.48 acre, containing commercial buildings, was part of the landowners' tract of 2.247 acres fronting on the existing highway, Route 17, a distance of 189 feet. Acquisition by the Commissioner of the land and easements resulted in elimination of the landowners' direct access to Route 17, including the blocking of an appurtenant easement of right-of-way twenty feet in width extending along the north side of the parcel to Route 17. The Commissioner planned to substitute, in lieu of direct access, indirect access to the remaining 1.767 acres by means of a service road to be constructed by

---

[1] A limited access highway is defined by Code § 33.1-57 as "a highway especially designed for through traffic, over which abutters have no easement or right of light, air or access to by reason of the fact that their property abuts upon such limited access highway."

[2] The Commissioner acquired title to the described properties, before filing the petition, by filing a certificate as authorized by Code § 33.1-121.

the Commissioner.[3] On appeal, the dispositive question is whether the trial court erred in permitting the condemnation commissioners to consider this change of access in determining their award of just compensation.

After viewing the property, the condemnation commissioners appointed by the trial court heard the testimony of witnesses. One expert, Thomas H. Morrison, testified for the Commissioner, and two, Claude J. Wilson and James W. Smith, testified for the landowners. All three agreed that the highest and best use of the land prior to the taking was commercial.

Morrison testified that the value of the land taken was $56,551, and damage to the residue was $9,362. In computing the damage he considered loss of parking space, and damage to waterlines and drainfields. He was of opinion that after the acquisition, the residue was not as desirable as before and, though "it could still be utilized in some commercial fashion," the use could not be "as intense." He conceded that he considered the property's desirability after its means of access was taken.

Wilson valued the land taken at $88,400 and damage to the residue at $20,160. Over objection, he was permitted to testify that in his opinion, the loss of direct access to Route 17 reduced the highest and best use of the residue from commercial to "woodland." The trial court ruled that the evidence was admissible and that it would be for the commissioners to decide the extent, if any, to which the value of the residue was reduced by the substitution of a service road for direct access.

Smith testified that the value of the property taken was $92,930 and damage to the residue was $46,020. He had ascertained that the soil in the residue was not suitable for a septic tank or drainfield, thereby making the land "almost completely useless." He considered the loss of direct access to Route 17 significant.

John Linsly, one of the landowners, testified that he estimated that the value of what was taken and damage to the residue was $130,000. He made no attempt to differentiate between the value of the take and damage to the residue.

The Commissioner proffered an instruction, refused by the trial court, that the landowners are only entitled to reasonable access

---

[3] The petition makes no provision for this service road. However, the road is shown on the plat attached to the petition, the testimony of the Commissioner's expert witness was predicated upon its construction, and we will assume that the Commissioner is required to provide it as an indirect means of access to the residue of the landowners' tract.

and if reasonable access exists no damages can result from a change in access. The trial court, over the Commissioner's objection, gave an instruction that the commissioners in determining the value of the take and the damage to the residue should consider the elimination of the easement of ingress and egress and allow compensation for extinguishment of the easement and damages, if any, to the residue resulting therefrom. The commissioners awarded $90,000 for the take and $35,000 for damages to the residue. The trial court overruled the Commissioner's exceptions and confirmed the award by order entered February 28, 1980.

On appeal, the Commissioner contends that the dispositive question is whether a reasonable reduction or limitation of access to a landowner's property resulting from construction of a limited access highway is compensable in condemnation proceedings. He says that we have established the controlling principle that such reduction or limitation of access is a valid exercise of police power and is not compensable. The landowners argue, however, that in the present case there is more than a limitation of access, there is a taking of land and easements of access, for which they are entitled to compensation. Moreover, they say that the taking has caused them to suffer compensable damage to the residue by reducing the highest and best use of the land.

In *Wood* v. *Richmond,* 148 Va. 400, 138 S.E. 560 (1927), upon which the Commissioner relies, the owner of a service station located at a corner of 34th and Leigh Streets sought to enjoin the City of Richmond from eliminating his driveway on 34th Street. We acknowledged that an abutter's easement of access to a public street is a property right, but we held that exercise of this right is subject to the right of the municipality to control the streets to promote the public safety and welfare. We reaffirmed the principle approved in *Bowman* v. *Va. State Entomologist,* 128 Va. 351, 362, 105 S.E. 141, 145 (1920), that a restraint upon the use of property to promote the public welfare is a regulation, not a taking, an exercise of police power rather than of eminent domain. *See* 2A Nichols on Eminent Domain (Rev. 3d ed. 1981) § 6.4443(4). The driveway had been constructed pursuant to a City permit which could be revoked at any time. We held that the City could require the removal of the driveway, although to do so apparently would deprive the owner of direct vehicular access to 34th Street.

The Commissioner also cites *City of Lynchburg* v. *Peters,* 156 Va. 40, 46, 157 S.E. 769, 771 (1931), for the principle, therein stated, but unnecessary to the decision, that discontinuance or partial obstruction of a street may be authorized provided abutting landowners have other access to their properties. In that case, a non-abutting landowner was denied damages for the closing of nearby streets in the construction of a public park.

In *Davis* v. *Marr,* 200 Va. 479, 106 S.E.2d 722 (1959), a landowner sought to enjoin the Commissioner from maintaining a "No Left Turn" sign at a crossover in the median strip of a limited access highway. The crossover was in front of a restaurant operated by the landowner's lessees and allegedly made worthless by the traffic sign, and the landowner asked for damages as well as injunctive relief. The landowner alleged that by contract several years previously he had agreed to convey land to the Commissioner for the conversion of a conventional highway into a limited access highway and the Commissioner had agreed to locate the crossover opposite the center of the restaurant. Although we held that the landowner was asserting a monetary claim against the Commonwealth which the trial court had no jurisdiction to hear, we also rejected, on its merits, the landowner's contention that the traffic sign could not be maintained in the crossover. The contract was not incorporated in the deed, and we presumed that use of the crossover was subject to regulations of the Highway Commission in the exercise of the police power.

We followed the general rule in *Highway Commissioner* v. *Howard,* 213 Va. 731, 195 S.E.2d 880 (1973), in holding that the abutting landowner had no compensable damage when the Commissioner installed a median strip, with no opening at the entrance to the landowner's property, in widening the highway from two lanes to four. Circuity of access imposed upon the abutter was an incidental non-compensable inconvenience caused by the lawful exercise of the police power to regulate traffic. The abutting landowner's direct access to the highway, however, was not extinguished.

We considered the reduction of direct access to an abutting highway in *Highway Commissioner* v. *Easley,* 215 Va. 197, 207 S.E.2d 870 (1974). In that case, the Commissioner took a strip of the abutting landowner's land to improve a highway by placing a median strip between the two eastbound and the two westbound lanes. The Commissioner also placed curbing along the highway

with two openings to provide direct access for the landowner. We held that the trial court erred in admitting evidence of damage to the residue resulting from the reduction in access and that the abutting landowner was not entitled to compensation when the State, in the exercise of its police power, regulated the flow of traffic. We also held that there was no evidence that the openings in the curbing would not provide the abutting owner with reasonable access to the highway. Here again, there was no elimination of direct access.

It thus appears, from *Howard* and *Easley,* that reduction or limitation of direct access to an abutting landowner's property generally is not compensable. *See* 1 Nichols on Eminent Domain (Rev. 3d ed. 1981) § 1.42(7) at 1-245. In the present case, however, there is a complete extinguishment and termination of all the landowners' rights of direct access to Route 17. The Commissioner argues that whether there is limitation of access or extinguishment of access and substitution of reasonable access by a service road, the same principle applies. We disagree.

■ The Commissioner is restricted to the provisions of his condemnation petition in which he described the land and easements that he had acquired under his certificate. Under Article I Section 11 of the Virginia Constitution the landowners' private property may not be taken for public use without just compensation. Code § 33.1-59 contemplated the extinguishment of easements of abutting landowners upon the conversion of a conventional highway into a limited access highway. The petition asked for the appointment of condemnation commissioners to ascertain "the value of the land taken including easements" and damages, if any, which may accrue to the residue beyond any enhancement in value "by reason of the taking." The value of the appurtenant easements, including the easement over the twenty-foot right-of-way extending along the north line of the Linslys' land was reflected in the value of the land. There was no separate award made for the easements taken.

■ The damage, if any, to the residue, over and above any enhancement, is the difference in fair market value immediately before and immediately after the taking. *State Highway Commissioner* v. *Allmond,* 220 Va. 235, 241, 257 S.E.2d 832, 836 (1979); *State Highway Commissioner* v. *Parr,* 217 Va. 522, 524, 230 S.E.2d 253, 255 (1976). Therefore, it was proper to permit the commissioners, in ascertaining the damage, to consider the effect

on market value of the substitution of indirect access for the easements that formerly afforded direct access to the highway. *See* 4 Nichols on Eminent Domain (Rev. 3d ed. 1981) § 12.41(1).

In deciding this case of first impression in Virginia, we find in our research little help in the cases decided under different statutes in other jurisdictions. There is no unanimity in the authorities. *See generally* Annotation, "Abutting Owner's Right to Damages for Limitation of Access Caused by Conversion of Conventional Road into Limited-Access Highway," 42 A.L.R.3d 13 (1972); 3 Nichols on Eminent Domain (Rev. 3d ed. 1981) § 10.2211(3). Thus, in North Carolina a landowner is entitled to no compensation for the restriction of access "where he is provided with a freely accessible service road connecting with the highway on which his property formerly abutted." *Haymore* v. *North Carolina State Highway Commission,* 189 S.E.2d 611, 614 (N.C. App. 1972). In Illinois, however, if access to a highway is taken or materially impaired, the landowner is entitled to compensation. *Department of Public Works and Buildings* v. *Wilson and Company,* 340 N.E.2d 12 (Ill. 1975). In that case, the Court stated that whether any compensable damage has occurred may depend upon the substitute access provided, since a new frontage road may be as good as the direct access formerly enjoyed. 340 N.E.2d at 18-19.

In the present case, all the expert witnesses agreed that the residue of the landowners' property was worth less after the taking than before. They differed of course in their estimates of the diminution in value. The landowners were entitled to have testimony as to the damages admitted in evidence. The Commissioner was entitled to show in mitigation of damages that he would construct a service road to provide reasonable substitute access to the highway. In some cases, where the factual situation is different, the Commissioner may be able to present persuasive evidence that the substitute access provided has enhanced rather than reduced the value of the residue, thereby eliminating any award for damages.

Therefore, we hold that in condemnation proceedings for the acquisition of land and easements in the conversion of a conventional highway into a limited access highway, the same test for the determination of damages must be applied as in other cases where the Commissioner exercises the right of eminent domain. The damage figure is the difference between the value of the residue immediately before and immediately after the taking. In the

present case, this was explained to the commissioners in a standard instruction given, without objection, by the trial court. An instruction specifically focusing on the effect of the extinguishment of the landowners' right of direct access was given over the Commissioner's objection that this was not a proper element of damages. As we have demonstrated, the effect that extinguishment of easements of direct access had on the value of the residue was relevant to a determination of damages. The instruction was unnecessary but we conclude that any error of the trial court in giving it in any form or in giving it in the language which was used was harmless in this case. Accordingly, we will affirm the judgment of the trial court.

*Affirmed.*