JOHN A. HAMER, ET AL.

V.

SCHOOL BOARD OF THE CITY OF CHESAPEAKE

Record No. 891350

June 8, 1990

Present: All the Justices

*George H. Gray (Outland, Gray, O'Keefe & Hubbard*, on brief), for appellants.

*James M. Pickrell; Gordon B. Tayloe, Jr. (Kellam, Pickrell, Cox & Tayloe*, on brief), for appellee.

JUSTICE RUSSELL delivered the opinion of the Court.

In this eminent domain proceeding, the issues on appeal concern the necessity of the taking, the burden of proof, the right to open and close final arguments, and comments of counsel during summation.

In 1985, the School Board of the City of Chesapeake (the Board) began a study of the need for expansion of the City's school system to meet anticipated population growth. In early 1988, after considering several alternatives, the Board adopted resolutions declaring that it was necessary to acquire a tract containing "50.2569 Acres, more or less" in the City, owned by members of the Hamer family, as a site for a future public high school.

In May 1988, the Board filed a petition for condemnation in the trial court. By responsive pleadings, the owners challenged the internal proceedings that led to the Board's adoption of the resolutions authorizing the taking, questioned whether the taking was being made for a public purpose, and challenged the necessity for the taking. The owners demanded a jury trial on all issues other than just compensation.

The trial court denied the request for jury trial and heard *ore tenus* all issues other than that of just compensation. After overruling the owners' other objections, the court conducted an extensive *ore tenus* hearing on the question of the necessity of the taking, during which both sides presented witnesses and documentary evidence.

The owners' first contention on appeal is that the court erred at this "first part of the bifurcated trial" in ruling that the petition for condemnation made a *prima facie* case for the necessity of the taking, thus placing the burden on the owners to go forward with evidence to refute the Board's assertion of necessity. The owners contend that the burden of proof and the burden of going forward with evidence on that issue should have been on the condemnor.

After that hearing, the court determined that the Board had proved the necessity of the taking. Thereupon, the court empaneled commissioners for trial of the issue of just compensation. After two days of testimony, the commissioners awarded $2,764,129.50 as just compensation for the property taken. The court overruled the owners' exceptions and confirmed the commissioners' report by final order entered August 11, 1989. We granted the owners an appeal, limited to the questions stated in the opening paragraph of this opinion.

## I. NECESSITY OF THE TAKING

The parties devoted a full day in the trial court to evidence and argument concerning the necessity of the taking. A large part of this time was consumed in debating whether there was a need, as the Board contended, for a new high school. The parties also devoted considerable time in oral argument and on brief to that issue on appeal. The owners contend that the Board had the burden of proof on that issue. The Board seemed to concede that it had some burden, but, analogizing this proceeding to zoning cases, contended that it was only required to show that the issue of necessity was "fairly debatable," and that its petition was sufficient to make that showing.

We, as well as the trial court, should have been spared this needless exercise. The question whether a taking is for a public purpose is a judicial question, reviewable by the courts, but the necessity or expediency of the condemnor's project, when its public purpose has been established, is a legislative question. *Stewart* v. *Highway Commissioner*, 212 Va. 689, 692, 187 S.E.2d 156, 159 (1972). The power of eminent domain is an essential attribute of sovereignty which, in our system, inheres in the General Assembly. The only constitutional limitations imposed upon the power of eminent domain are contained in the just compensation clause, Va. Const. art. I, § 11. Thus, there is no constitutional right to a hearing on the issue of necessity. *See Railway Company* v. *Llewellyn*, 156 Va. 258, 278-80, 157 S.E. 809, 815-16 (1931).

The legislature may delegate its power to political subdivisions, governmental bodies, and certain regulated private entities exercising functions charged with the public interest, but such a delegation does not render the necessity for the exercise of the power by the delegatee subject to judicial review, unless the legislature, by statute, expressly so provides. *Stanpark Realty Corporation* v. *City of Norfolk*, 199 Va. 716, 721, 101 S.E.2d 527, 531 (1958).

Code § 15.1-237, by cross-reference to other sections, imposes limitations upon condemnations for certain enumerated public purposes, subjecting the necessity of those takings to judicial review under certain circumstances.[1] Public school uses, however,

---

[1] When *Stanpark* was decided in 1958, Code § 15-668, the statutory predecessor of Code § 15.1-237, provided that no property was to be condemned for the enumerated purposes "unless the necessity therefor shall be shown to exist to the satisfaction of the court."

are not among the purposes subjected by statute to judicial review on the issue of necessity. Accordingly, neither the trial court nor this court has jurisdiction to review the wisdom of the Board's legislative decision that an acquisition of property was necessary for an expansion of the school system.

## II. SITE SELECTION

There was an additional component to the owners' attack on the Board's right to acquire the property. Even if it is beyond dispute that it was necessary for the Board to acquire property somewhere, the owners contend that the Board selected their particular property "arbitrarily and capriciously."

In *Stewart*, 212 Va. at 692, 187 S.E.2d at 159, we observed that although the necessity and expediency of a road was a legislative question, the discretion of the officials determining its *location* would be "reviewable by the courts only if it is arbitrarily or capriciously exercised or where there is manifest fraud." In *Kricorian* v. *C & P Tel. Co.*, 217 Va. 284, 288, 227 S.E.2d 725, 728 (1976), we reaffirmed that statement in *Stewart*, holding that a condemnor's discretion "in determining the specific property and the amount of land to be taken" was subject to judicial review if that discretion is alleged to have been arbitrarily and capriciously exercised. Examining the evidence in *Kricorian*, we determined that the "condemnor's choice of plans was at least fairly debatable, and action is not arbitrary or capricious if exercised honestly and upon due consideration, when there is reason for a difference of opinion." *Id.* (citation omitted).

Having alleged an arbitrary and capricious exercise of discretion, the owners were entitled to prove it if they could. In such cases, however, the burden is upon the owner, because it is presumed that an entity to which the legislature has delegated the power of eminent domain "has exercised the power with the wisdom and discretion lodged in it by the legislature. The burden of showing the contrary is upon any person who objects to the proceeding." 1A. J. Sackman, NICHOLS' THE LAW OF EMINENT DOMAIN § 4.11[4], p. 4-291 (rev. 3rd ed. 1989).

Accordingly, we hold that when a condemnee alleges that the condemnor has arbitrarily and capriciously decided upon the

A 1983 amendment provides an alternate method of establishing necessity: where it is "declared by resolution of the governing body following a public hearing." Acts 1983, c. 434.

location or quantity of property to be taken, the condemnee has both the burden of persuasion and the burden of going forward with the evidence on that issue. If the condemnee establishes a *prima facie* case, the burden of going forward with the evidence shifts to the condemnor. The condemnor's burden is then only to produce sufficient evidence to show that the issue was "fairly debatable." *Kricorian,* 217 Va. at 288, 227 S.E.2d at 728. If the condemnor makes that showing, the court will conclude that the condemnor's discretion was fairly and honestly exercised.

■ Here, the trial court correctly placed the burden of persuasion on the owners. Reviewing the evidence, the court found that the owners had failed to adduce any proof in support of their allegation of arbitrary and capricious site selection. The record fully supports that finding.

### III. BURDEN OF PROOF ON ISSUE OF JUST COMPENSATION

The owners assign error to the court's refusal to instruct the commissioners that the Board had the burden of proof on the issue of just compensation. We have not previously made an express ruling on that question. The present case involves a taking of the owners' entire property. Accordingly, we are not here concerned with the burdens of proving damage to the residue or enhancement in value which attend most partial takings. *Cf. State Highway Comm'r* v. *Allmond,* 220 Va. 235, 240 n.2, 257 S.E.2d 832, 835 n.2 (1979) (burden of proving damages to residue is on owner; burden of proving enhancement is on condemnor). Rather, we are concerned with the allocation of the burden of proving the value of the property taken.

In support of their contention that this burden should be on the condemnor, the owners analogize the case to an action at law, in which the burden would be upon the condemnor because it is the "plaintiff." That argument misconceives the origin of the statutory scheme governing condemnation cases. Condemnation proceedings in Virginia, as elsewhere in the English common-law system, were originally conducted pursuant to the ancient common-law writ of *ad quod damnum.* The writ was issued out of chancery to the sheriff, directing him to empanel a jury or commissioners to enquire what damages the king would incur by laying out a market, fair, highway, or other public works on private property. The proceeding was entirely *ex parte;* the landowner was given no

notice or hearing and was not even named. The jury or commissioners went upon the land and returned their report to the court, but no proceedings were had in a courtroom. Neither the judge nor counsel took part. *See generally*, 1 NICHOLS' THE LAW OF EMINENT DOMAIN § 1.21, p. 1-71 and 1-72.

■ After the adoption of the due process guarantees contained in both State and Federal Constitutions, *ad quod damnum* proceedings were modified to provide the owner an opportunity for fair notice and a right to be heard on the issue of just compensation. Nevertheless, the function of the commissioners remains today essentially as it was under the writ of *ad quod damnum*. The commissioners, who are disinterested resident freeholders, take an oath "that they will faithfully and impartially *ascertain* what will be the value of the property to be taken." Code § 25-46.20 (emphasis added). They are not sworn, as a jury would be, to decide the case "according to the evidence."[2]

■ The reason for the distinction is that commissioners may still, as in the time of *ad quod damnum* proceedings, "ascertain" the value of the property taken without being limited by the opinions of those who testify in the courtroom. They are not bound by the opinions of expert witnesses, *Highway Commissioner v. Foster*, 216 Va. 745, 748-49, 222 S.E.2d 780, 782 (1976), and may, indeed, "ascertain" the value of the property based "largely" upon their view of it, *Highway Commissioner v. Carter*, 216 Va. 639, 641, 222 S.E.2d 776, 777 (1976), although the commissioners' view is no longer, as it once was, to be considered as the "sole evidence in the case." *Id.*

Further, the commissioners are not bound by the apparent *weight* of the evidence, although their awards must be "measured by the evidence," must be "related to the value of the property," and must not be "arbitrary or capricious." *VEPCO v. Patterson*, 204 Va. 574, 578, 132 S.E.2d 436, 439 (1963), *cert. denied*, 376 U.S. 956 (1964). For those reasons, the burden-of-proof principles which govern actions at law are inapplicable to condemnation proceedings.

■ Because of the great responsibility and relative independence vested in condemnation commissioners to "ascertain what will be the value of the property to be taken," there is no

---

[2] *See* Office of the Executive Secretary, Supreme Court of Virginia, Handbook for Judges and Clerks in Virginia, p. 1:A-19 (rev. 1989).

burden of proof, in the common-law sense, on the issue of just compensation. The condemnor must institute the proceeding by filing a petition and giving notice pursuant to Code § 25-46.9, but the owner need not file responsive pleadings. He is not in default on the issue of just compensation if he fails to do so, because it is expressly provided that he may appear and present evidence on that issue notwithstanding his failure to file responsive pleadings. *Id.* The condemnor's duty to institute the proceedings is therefore not the counterpart of the burden that devolves upon a plaintiff by virtue of his bringing an action at law. There is no ultimate "risk of nonpersuasion" on the issue of just compensation for property taken in a condemnation proceeding, and the trial court correctly so held in this case.

## IV. RIGHT TO OPEN AND CLOSE

The owner contends that the trial court erred in giving the Board the right to open and close the final arguments to the commissioners after having ruled that the Board did not have the burden of proof on the issue of just compensation. The question of the right to open and close was decided in *Ryan* v. *Davis*, 201 Va. 79, 109 S.E.2d 409 (1959), where we said,

> It has been the traditional practice in this State for the condemner to open and close the argument before Commissioners.

> . . .

> Regardless of the burden of proof, the principle remains that the condemner has the burden of bringing the proceeding and going forward with the evidence. This clearly gives him the right to open and close.

*Id.* at 84-85, 109 S.E.2d at 414 (citations omitted). Accordingly, the trial court's ruling was correct.

## V. COMMENTS OF COUNSEL

In closing argument before the commissioners, counsel for the Board criticized the testimony of one of the owners' experts on valuation and then asked, "[i]s that what you are going to pay your money for?" Owners' counsel immediately objected. The

court sustained the objection and instructed the commissioners that counsel's reference to "your money" was improper argument and was to be disregarded. The owners nevertheless moved for a mistrial. Counsel for the Board agreed that the remark had been improper and stated that it had been inadvertent. The court denied the motion for a mistrial.

Soon thereafter, in concluding his rebuttal argument, counsel for the Board said to the commissioners, "Gentlemen, I say to you the same thing: Be fair, but be fair to yourself when you come in with your award." The owners' counsel again objected, saying "[t]hat is the same thing he was talking about before." The court overruled the objection.

On appeal, the owners point out that the commissioners were required by law to be resident freeholders of the City, and thus, necessarily, were subject to assessment for local property taxes which would be levied to defray their award. Therefore, the owners argue, references to paying "your money" and being "fair to yourself" were strong appeals to their private pecuniary interests, and for that reason highly improper. We agree.

In *Maxey* v. *Hubble*, 238 Va. 607, 385 S.E.2d 593 (1989), we said:

> Where counsel makes an improper statement and the court takes prompt action to remove it by appropriate instruction to the jury, it will ordinarily be presumed that the jury heeded the instruction and that no lasting harm was done. But where the prejudicial effect is so overwhelming that it cannot be removed by the court's instruction, the injured party, if he requests it, is entitled to a new trial. *Saunders* v. *Commonwealth*, 218 Va. 294, 303, 237 S.E.2d 150, 156 (1977). The injured party's right to a new trial is especially strong where his opponent has persisted in an objectionable course of conduct after the trial judge has expressed disapproval of it, sustained an objection to it, or instructed the jury to disregard it. In that situation, an appellate court will presume that the prejudicial effect of the improper conduct was too strong to be removed by further admonitions or jury instructions.

*Id.* at 615-16, 385 S.E.2d at 597.

 Standing alone, any prejudicial effect of either remark by the Board's counsel would have been cured by a prompt cautionary instruction from the court. Counsel's persistence in a course of conduct which the court had disapproved and instructed the commissioners to exclude from their considerations, however, raised a presumption that "the prejudicial effect of the improper conduct was too strong to be removed by further admonitions." *Id.* at 616, 385 S.E.2d at 597. Nothing was done in the present case to rebut that presumption. When counsel for the Board, for the second time, made an appeal to the commissioners' personal interests, the court gave no further cautionary instruction, but overruled the objection. In those circumstances, the party injured by the improper remarks has made out an "especially strong" case for a new trial. *See id.*

Accordingly, we will reverse the judgment and remand the case for a new trial on the issue of just compensation.

*Reversed and remanded.*

JUSTICE COMPTON dissenting, in part.

"When it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached, no judgment shall be arrested or reversed." Code § 8.01-678. In the context of the entire closing argument, I do not view School Board counsel's isolated comments seized upon by the majority to be so egregious as to warrant a reversal and a new trial.

The Court has affirmed the trial court on all the significant appellate issues, rulings in which I join. Even if I agreed with the majority that the trial court abused its discretion in connection with the closing argument, I nevertheless would affirm the judgment below.

The landowners' evidence on the issue of just compensation ranged from about $4.9 million to about $5.4 million. The condemnor's evidence on that issue valued the property in the sum of approximately $1.6 million. The award of $2.7 million is well within the range of the conflicting evidence, lower than the landowner claimed and higher than the condemnor estimated.

Given the otherwise errorless conduct of the trial, I would not put these parties to the time and expense of another trial for two

fairly innocuous comments during closing argument when, I submit, it appears the litigants have had a fair trial on the merits and substantial justice has been attained.