## Richmond

LUCILLE L. BRADSHAW, ET AL. V. STATE HIGHWAY COMMISSIONER OF VIRGINIA.

June 16, 1969.

Record No. 6953.

Present, All the Justices.

*R. Baird Cabell* (*Thomas L. Woodward*, on brief), for appellants.

*Troy G. Arnold, Jr., Assistant Attorney General* (*Robert Y. Button, Attorney General; Paul D. Stotts, Assistant Attorney General,* on brief), for appellee.

I'ANSON, J., delivered the opinion of the court.

This is an eminent domain proceeding brought by the State Highway Commissioner to condemn for highway purposes several strips of land of variable widths, containing approximately 1.928 acres in fee simple, and utility and drainage easements over approximately .384 of an acre of land, owned by Lucille L. Bradshaw and N. H. Bradshaw, in Isle of Wight county. Commissioners were appointed to ascertain just compensation to the landowners, and after viewing the property and hearing evidence they filed their report awarding $4,100

for the land and easements taken and $4,900 for damages to the residue, or a total of $9,000.

In a written opinion, the trial court overruled the landowners' exceptions to the commissioners' report and entered judgment on the award. The landowners have appealed, and they now contend that the court erred in admitting evidence (1) of the cost of relocating the service area of the gasoline filling station from the east side of the combination dwelling, store and filling station to the north side of the building; and (2) of the cost of replacing and reconstructing that part of a pond which was included in the taking.

The property taken lies astride State highway route 258 and on the north side of route 611, approximately five miles north of the city of Franklin. Route 258 runs generally north and south and is intersected by route 611, which runs east and west.

The landowners own a two-story combination dwelling, gasoline service station and grocery store at the northwest corner of the intersection of routes 258 and 611. A fifteen-foot canopy extends from the east or main side of the building over the gasoline tanks and pumps. The new highway right of way comes within 14½ feet of the canopy, impeding its use.

A witness for the highway commissioner testified that the best way to estimate damages to the building was by moving the canopy and "gas line equipment" to the north side of the building, which he said would cost approximately $1,200. In this relocated position, vehicles traveling along routes 258 and 611 would still have access to the service area of the filling station. It would also give the landowners five additional feet of frontage on the east or main side of the building.

The landowners introduced evidence that if the canopy and gasoline lines were moved to the north side of the building the service station area would be inaccessible to vehicles traveling on route 611; that it would be inconvenient for vehicles on route 258 to enter and leave the service station; and that the living quarters would have to be moved from the north side to another part of the building.

On the east side of route 258, near its intersection with route 611, the landowners have a man-made pond. The Commonwealth took approximately one-quarter of an acre of the pond, including its dam on the west side and a very small portion of the dam on the north side. There was evidence as to the value of the landowners' property on the east side of the pond and the cost of removing dirt therefrom in order to restore the pond to the size it was before the taking.

The landowners concede that it is ordinarily the duty of owners of property taken by eminent domain proceedings to minimize their damages to the residue so far as they reasonably can. But they say that the trial court erred in permitting the highway commissioner to introduce evidence of the cost of moving the canopy, gasoline tanks and pumps, because they were not bound to enter upon such a doubtful and speculative undertaking to minimize their damages.

There is a rule of broad acceptance that in arriving at the market value of property which has been damaged in exercising the right of eminent domain, the court should admit evidence of possible expenditures which, if made, would diminish the damages. Such evidence, however, should be considered by the commissioners, not as independent and distinct items of damage, but as elements bearing on the difference between values before and after the taking. *Pima County v. De Concini*, 79 Ariz. 154, 285 P. 2d 609, 611 (1955); *Commonwealth, Department of Highways v. York*, 390 S. W. 2d 190, 192 (Ky. 1965); *Pittsburgh Terminal Whse. & T. Co. v. City of Pittsburgh*, 330 Pa. 72, 198 A. 632, 633, 634 (1938); *Arkansas State Highway Commission v. Speck*, 230 Ark. 712, 324 S. W. 2d 796, 800, 801 (1959). See also, *Dressler v. Covington*, 208 Va. 520, 522, 158 S. E. 2d 660, 662 (1968).

*Town of Cape Charles v. Fish Co.*, 200 Va. 667, 107 S. E. 2d 436 (1959), relied on by the landowners, is clearly distinguishable on the facts from the present case. There the town brought eminent domain proceedings to condemn an easement for the dredging of a deep water channel through oyster grounds held by Ballard Brothers under a lease from the Commonwealth. The trial court set aside the award of the first commission because it had given an instruction which told the commission that in considering damages to the oysters in the area of dredging they should consider the cost of replanting them, or if suitable grounds were not available, the amount that Ballard Brothers could get by selling them on the going market. In holding that the trial court was plainly right in setting aside the award of the first commission because of the erroneous instruction, we said that ordinarily it is the duty of the owner of property taken by eminent domain to minimize his damages, but since "there was substantial evidence that because of loss and expense it would not be practicable to take up and replant the oysters" Ballard Brothers was not required to minimize damages by entering into such a doubtful and speculative undertaking.

It is true that the landowners in the present case were not required to enter upon a doubtful or speculative undertaking, but it was their duty, so far as reasonably possible, to minimize their damages. There was substantial evidence that the landowners could move the location of the service station area to the north side of their building and serve vehicles traveling on routes 258 and 611 as they had done before. Thus the relocation of the service area of the filling station would not amount to a doubtful or speculative undertaking. If landowners' property could still be preserved as a service station, the commissioners were entitled to consider the cost incident thereto, not as the measure of damages but to serve as an aid to them in fixing the market value of the property before and after the taking. The commissioners viewed the property and heard the evidence and were in a position to determine whether the landowners could reasonably mitigate their damages by moving the service station area. Hence we hold that the trial court did not err in permitting the highway commissioner to introduce evidence of the cost of the proposed change in mitigation of damages.

The landowners also say that the trial court erred in admitting evidence as to the cost of restoring the pond to its original size and use. The same principles heretofore discussed are also controlling as to this assignment of error.

Moreover, the record shows that landowners waived their objection to the evidence on the cost of restoring the pond. When the trial court instructed the commissioners that "they had a right to consider the cost of reconstructing the pond in arriving at damages to the residue; [and] that they could consider the value of the farm with a pond and without a pond," counsel for the landowners stated, "I think you have covered my original objection. Solely a question of damages to the residue."

For the reasons stated, the judgment is

*Affirmed.*