COURT OF APPEALS OF VIRGINIA

**PUBLISHED**

Present:   Judges O'Brien, Ortiz and Senior Judge Humphreys
Argued at Lexington, Virginia


TOWN OF IRON GATE, VIRGINIA

v.        Record No. 1588-23-3

JENNIFER LYNN SIMPSON

OPINION BY
JUDGE MARY GRACE O'BRIEN
SEPTEMBER 17, 2024

FROM THE CIRCUIT COURT OF ALLEGHANY COUNTY
Edward K. Stein, Judge

(Jared R. Jenkins, on brief), for appellant.  Appellant submitting on brief.

Norman A. Thomas (Joshua E. Baker; Blake A. Willis; Norman A. Thomas, PLLC; Waldo & Lyle, P.C., on brief), for appellee.


The Town of Iron Gate allowed a stormwater drainage pipe to flood the property of Jennifer L. Simpson,[1] and she brought an action for inverse condemnation.  The circuit court found that the Town was liable for taking Simpson's property without just compensation and confirmed a jury award of $37,586 for the value of the take.  The court also reimbursed Simpson for her attorney fees and costs of $206,785.74, pursuant to Code § 25.1-420.

On appeal, the Town argues that the court erred by not recusing itself, not sustaining a demurrer, and not allowing evidence that Simpson failed to mitigate her damages.  The Town also challenges the reimbursement award, arguing that Simpson was not entitled to fees and costs under Code § 25.1-420 because she had not yet paid them.  For the following reasons, we affirm.

---

[1] Simpson's last name is now Worley, but the subject property is still titled under her former name.  Accordingly, the case caption has not changed, and this opinion refers to her by her former name.

BACKGROUND[2]

I. Flooding from the Town's Stormwater Pipe

As part of its stormwater management system, the Town owns a drainage pipe that runs beneath Simpson's property. When Simpson purchased the property in 2013, she did not know about the pipe or that it had a history of flooding the property. A prior owner had discovered the pipe in 2010 and had alerted the Town that it was "partially disintegrated" and causing the property to flood. In 2011, the Town encased the pipe with a "boot," but the flooding continued. Although the Town recognized that the flooding problem persisted, it took no further action aside from requesting that the Virginia Department of Transportation clean out its lines to which the Town's pipe connected. The Town knew that when VDOT's system clogged, the water flow in the pipe backed up and flooded the property.

Simpson's property flooded often, and the incidents intensified in 2017 and 2018. She did not notify the Town of these earlier flooding events, however, because she did not know about the pipe or the Town's ownership of it. After a December 2018 incident, the most significant she had experienced, Simpson reported the flooding to Town administrators and requested assistance.

In January 2019, the Town examined the pipe and determined that the best fix was to replace it. The Town excavated a portion of the property and removed a 20-foot section of pipe running beneath Simpson's garden and yard. But the Town left an open ditch and never replaced the pipe nor restored the yard. A portion of pipe still runs under the front corner of Simpson's home. Her property continued to flood after VDOT cleaned its system in 2019 and after the Town dug up a portion of the pipe.

---

[2] "In accordance with familiar principles of appellate review, the facts will be stated in the light most favorable to the prevailing party at trial." *Norfolk S. Ry. Co. v. Sumner*, 297 Va. 35, 37 (2019).

Simpson filed a declaratory judgment action pursuant to Code § 8.01-187, asking for a determination that the Town had taken and damaged her property without just compensation, in violation of Article I, Section 11 of the Constitution of Virginia. She asked for the empanelment of a jury to assess the value of the take, also pursuant to Code § 8.01-187. Finally, she asked for an award of attorney fees, costs, and expert witness fees under Code § 25.1-420. The Town filed a demurrer, arguing that Simpson failed to state a claim for inverse condemnation. Specifically, the Town argued that Simpson failed to allege that any taking was for a "public use" and that, at best, she only alleged negligent repair of the pipe—which is not a basis for an inverse condemnation award. Relying on *AGCS Marine Ins. Co. v. Arlington County*, 293 Va. 469, 483 (2017), the court overruled the demurrer, finding that Simpson properly alleged that the Town's "purposeful acts and omissions" effected a taking and damaging of her property and that these alleged acts and omissions were "for a public use."

The matter proceeded to a bench trial on the issue of liability (October 7, 2021), followed by a jury trial on the issue of just compensation (April 26, 2023), and finally a hearing on Simpson's claim for attorney fees and costs (July 13, 2023).

II. Liability Bench Trial

At the liability trial, Simpson presented evidence that the Town knowingly allowed the pipe to flood her property with stormwater. In response, the Town argued that "surface water"—not stormwater from the pipe—had collected on Simpson's property and therefore was not the Town's responsibility nor a taking for a public use.[3] Furthermore, to the extent any stormwater had flooded Simpson's property, the Town argued that it had not acted purposefully or knowingly; instead, it

---

[3] The Town also argued that VDOT caused the flooding because it failed to keep its own water lines unclogged. VDOT's role is not at issue on appeal.

had done "everything in its power" to repair the pipe but was "stymied" by Simpson and the litigation.

The Town introduced evidence of its "plan" to fix the pipe, which included requiring Simpson to execute a "deed of gift" that would give the Town an easement to access her property and make repairs. Simpson did not sign this deed of gift but wanted to consult counsel. The Town also maintained that Simpson interfered with remedial efforts by never presenting the Town with a claim for damages.

The court found that the Town had taken and damaged Simpson's property without just compensation. Specifically, on the evidence presented, the court determined that the Town "knew and has known for years that the storm water management system does not always operate properly; and that when it does not[,] then there is no outlet for the Town's storm water management system, and that it will cause storm water to back up onto [Simpson's] [p]roperty."

Further, the court found that the Town "has intentionally and knowingly allowed [Simpson's] [p]roperty to serve as a storm water drainage overflow site." It concluded that the Town "has taken, without payment of just compensation . . . [Simpson's] property by effectively taking a drainage easement across [her] [p]roperty for the purpose of storing excess storm water [that] leaves its [p]ipe and drainage system."

III. Just Compensation Trial

The matter proceeded to a just compensation trial, where a jury returned a verdict in the full amount sought by Simpson, $37,586. This amount was based on the testimony of Simpson's expert appraiser, Dennis Gruelle. Gruelle calculated just compensation based on "two components"—(1) the value of the "rights being taken" and (2) "the impact to the remainder property."

Gruelle testified that, in making his appraisal, he considered that the property had a reduced market value because the pipe was not fixed and either Simpson or future owners would have to

continue suing the Town for inverse condemnation. On cross-examination, the Town asked whether Gruelle considered that the Town "had offered and had allocated money" to fix the pipe.[4] Gruelle answered that his analysis was confined to the court's liability order and "anything that the Town had done outside of that [liability] order didn't affect what I was doing here, valuing the impact of the taking."

The Town then cross-examined Gruelle concerning his "assumption" that "future purchaser[s] would have to come to court and litigate their constitutional rights when there is evidence that the Town is affirmatively saying we will fix this problem." Gruelle responded that the Town had been claiming it would fix the pipe since 2019 and still had not done so and, therefore, he could assume that litigation would continue.

The Town persisted in this line of questioning, again asking Gruelle whether he considered the Town's offer to fix the problem and that the Town had "not been allowed to fix the pipe." At this point, Simpson objected, arguing that these questions were "irrelevant to the determination of the value of the take and the damage to the property." Further, Simpson objected that the Town's lawyer was "testifying to facts not in evidence." The court sustained the objection, finding no evidence that the Town "affirmatively said we will fix this as soon as you let us." The court also found that the Town had essentially already asked the question and received an answer and did not need to pursue the issue further. When the Town again asked Gruelle whether he "consider[ed] that the landowner had refused the Town's offer to replace and repair the pipe," the court again sustained Simpson's objection based on relevance and factual mischaracterizations.

Later, the court precluded testimony from the Town's only witness—former mayor Charles Unroe—regarding the Town's offer to fix the pipe and that Simpson "never presented any claim to

---

[4] The record reflects that the Town subsequently reallocated the funds toward defending the inverse condemnation lawsuit.

the Town for damages to her personal property." The court excluded this purported "mitigation" evidence because whether Simpson presented a claim for damages to the Town earlier would not have changed the amount ultimately paid or required to be paid by the Town. Additionally, the court precluded evidence of settlement negotiations to establish that Simpson failed to mitigate damages; Simpson's accepting or rejecting an offer of settlement was not "mitigation of damages," the court found, drawing the following distinction:

> Letting her freezer be damaged, rather than putting it up on cinder blocks . . . would be a non-mitigation of damages, not making attempts to save her property. If she knows things are in the basement and they're flooding and she keeps storing stuff in the basement and allows it to get damaged after she knows it's going to flood, that's not mitigating her damages. Rejecting an offer is not mitigation of damages. It's an offer of settlement. It's not admissible.

The court also found that the Town had mischaracterized evidence from the liability trial. The Town had not made a simple offer to fix the pipe, which Simpson refused. Instead, the Town had made "demands" for a signed deed of gift from Simpson, who wanted to consult an attorney. Accordingly, the court determined that the Town's evidence concerning its purported willingness or offer to fix the pipe, and Simpson's failure to present an earlier claim of damages, were not relevant to the jury's determination of just compensation. Nevertheless, the court noted that Gruelle acknowledged on cross-examination that he "did not take into consideration any offer by the Town to fix the pipe." As the court observed, Gruelle's acknowledgment "came in without objection," and only when the Town "continued down that line of questioning, there was an objection and it was sustained."

The court entered an order confirming the jury award and ordering the Town to pay accordingly.

IV. Attorney Fees and Costs

The parties reconvened for a hearing on Simpson's claim for attorney fees and costs under Code § 25.1-420. After reviewing her experts' and counsel's statements for time and costs, the court ordered that the Town pay Simpson's attorney fees and costs in the requested amount of $206,785.74, plus interest.

## ANALYSIS

I. Recusal

In its first assignment of error, the Town argues the trial judge erred by "refusing to recuse himself from the proceedings, even after explicitly stating his bias against the Town."

The Town did not provide a transcript from the hearing on its motion for recusal, which occurred on March 27, 2023—almost one and a half years after the liability bench trial.

Rule 5A:8(b)(4)(ii) precludes our review of this assignment of error because the Town failed to provide an adequate record. *See also Dixon v. Dixon*, 71 Va. App. 709, 716 (2020) ("The burden is upon the appellant to provide . . . a record [that] substantiates the claim of error."); *Browning v. Browning*, 68 Va. App. 19, 30-32 (2017).

The record contains the Town's written recusal motion and the transcript from the liability bench trial during which the court made statements underlying the motion. It also contains the court's denial order, which tracks the relevant canons of judicial ethics in general terms. Without the March 27 transcript, however, we have no way of knowing precisely the issues raised, waived, or rejected below. In the absence of a sufficient record, we will not consider the claim of error. *Dixon*, 71 Va. App. at 716; *see also Robinson v. Robinson*, 50 Va. App. 189, 197 (2007) ("In the absence [of a sufficient record], we will not consider the point.").

The necessity for the March 27 transcript is underscored by the fact that the court, when faced with a motion for reconsideration of the recusal decision, stated that it was again denying the

motion "[f]or the reasons already stated on the record." But without the March 27 transcript, we do not know those "reasons already stated on the record" and are therefore unable to review fully the Town's arguments and court's ruling below.

Although the Town repeatedly renewed its motion for recusal, these requests were often in response to adverse evidentiary rulings during the just compensation trial. On appeal, the Town emphasizes the court's denial of its initial recusal motion following the liability trial. Therefore, the March 27 transcript is indispensable to resolving this assignment of error. Because the Town failed to ensure that the record contains the necessary transcript, we cannot reach this assignment of error. *See Smith v. Commonwealth*, 281 Va. 464, 469-70 (2011) (collecting cases where the "failure to file an indispensable transcript resulted in wavier of the issue associated with the transcript").

II. Demurrer

The Town argues that the court erred by not granting its demurrer, arguing that Simpson's petition failed to state a claim for inverse condemnation.

We review the circuit court's ruling on a demurrer de novo.[5] *AGCS Marine Ins. Co.*, 293 Va. at 473. "A demurrer accepts as true all facts properly pled, as well as reasonable inferences from those facts." *Steward v. Holland Family Props., LLC*, 284 Va. 282, 286 (2012). It "tests the legal sufficiency of the facts properly alleged in the challenged pleading and the inferences fairly drawn from those facts, all of which are accepted as true." *Murayama 1997 Tr. v. NISC Holdings, LLC*, 284 Va. 234, 245 (2012). When faced with a demurrer, it is inappropriate to "inject new

---

[5] Simpson argues that the Town waived this assignment of error by failing to include the transcript from the demurrer hearing. However, unlike the assignment of error pertaining to judicial recusal, here the transcript is not indispensable to our review of this issue. This assignment of error requires us only to examine, de novo, the four corners of Simpson's pleading and determine whether she stated a claim for a declaratory judgment that the Town took and damaged her property for a public use without just compensation. *See Humphries v. Buchanan*, 80 Va. App. 774, 780 n.3 (2024) (en banc) (finding that a transcript was "not indispensable" for an assignment of error that raised "only a pure question of law subject to de novo review").

matter[s] in[to] the record" because it "is elementary that a demurrer . . . lies only for a matter already apparent on the face of the pleadings." *Cnty. Sch. Bd. of Tazewell Cnty. v. Snead*, 198 Va. 100, 103 (1956).

Article I, Section 11 of the Constitution of Virginia provides that "no person shall be deprived of his . . . property without due process of law" and "[n]o private property shall be damaged or taken for public use without just compensation to the owner thereof."

Code § 8.01-187 provides a remedy for violations of this constitutional provision: "Where a property owner believes that his property has been taken or damaged within the meaning of this Constitutional provision and compensation has not been paid, the remedy afforded by [Code § 8.01-187] is for the property owner to file a complaint for declaratory judgment to determine the compensation to be paid." *Byler v. Va. Elec. & Power Co.*, 284 Va. 501, 506 (2012); *see* Code § 8.01-187.

To state a claim for inverse condemnation, a petitioner must allege 1) that she is the owner of private property or some right attached thereto; 2) that the property or right connected to that property has been damaged or taken by a body with condemnation authority; 3) that the taking and/or damaging was for a public use; and 4) that the government body failed to pay just compensation. *See Kitchen v. City of Newport News*, 275 Va. 378, 386 (2008).

The Town only disputed the third element in its demurrer, arguing Simpson failed to allege that the Town damaged her property for a public use. Although the Town stipulated that its operation and maintenance of stormwater drainage facilities was a public use, it nevertheless insists that the petition was defective because it merely alleged ineffective pipe repair by the Town. Relying on *AGCS Marine Insurance Co.*, the Town argues that "[t]ortious or wrongful conduct by a governmental official, acting outside his or her lawful authority, can never be a sufficient ground, in itself, for an inverse condemnation award." 293 Va. at 479.

Simpson's petition, however, did not allege mere negligence by the Town and properly stated a claim for inverse condemnation. Liability for inverse condemnation attaches where a government's "purposeful act or omission caus[es] the taking of, or damage to, private property for a public use." *Id.* at 482. In the context of flooding, the Supreme Court has found the "public use" element satisfied based on allegations that the government failed to maintain a water-discharge system and "[i]n essence . . . elected to use the [private property] as makeshift storage sites for excess stormwater." *Livingston v. Va. Dep't of Transp.*, 284 Va. 140, 159 (2012); *see AGCS Marine Ins. Co.*, 293 Va. at 473-74, 482-86 (holding that sewage overflows, which damaged grocery store inventory, constituted a public use).

In her petition, Simpson specifically alleged that the Town used her "property as a 'makeshift storage site for excess stormwater,' which was accomplished for the public use of maintaining and operating the Town's stormwater system." She alleged that the Town "purposefully uses, operates, and maintains a stormwater system in a manner that directs storm water onto [her] property" and "purposefully declined to resolve the issues or to discontinue use of the [p]ipe, and has continued to intermittently direct stormwater through the [p]ipe for the public use of stormwater drainage, despite being fully-informed that the action will result in flooding to [her] property." She alleged that the pipe was "part of the Town's stormwater control system," which was used to "direct, transport, and control the flow of stormwater," that the Town had "full knowledge of the issues with the [p]ipe" dating back to 2011 when it "fitted a 'boot' on the pipe . . . to prevent leakage, but the repair was ineffective," that the prior owner "informed the Town repeatedly of the problem," that the Town "purposefully declined to resolve the issues or to discontinue use of the [p]ipe," and that the Town admitted the problem "should have been dealt with a long time ago," yet continued to use the pipe.

Therefore, contrary to the Town's assertion, the petition contains numerous factual allegations that the Town intended to flood Simpson's property. The petition clearly articulates Simpson's inverse condemnation theory: despite knowing that its pipe would continue to flood Simpson's property, the Town chose to do nothing to prevent the problem from occurring and reoccurring. This is precisely the conduct to be remedied by an inverse condemnation action—to redress the Town's "elect[ion] to use [Simpson's property] as [a] makeshift storage site[] for excess stormwater" instead of maintaining its infrastructure. *Livingston*, 284 Va. at 159; *AGCS Marine Ins. Co.*, 293 Va. at 482.

Although the petition refers to the Town's failed attempts at repairing the pipe, these factual allegations served to demonstrate the Town's ownership of the pipe and its knowledge that the problem of stormwater flooding persisted, despite its attempted repairs. In other words, the failed repair, in and of itself, was not a fact on which Simpson relied to establish the Town's liability and does not render her pleading defective.

Therefore, on the face of her petition, Simpson alleged more than mere ineffective pipe repair. She alleged that the Town knowingly and purposefully allowed this ineffective repair to linger, which resulted in distinct and separate flood events. Our standard of review requires us to accept as true all factual allegations in Simpson's pleading, including allegations of knowing and purposeful conduct on the Town's part. She did not allege mere negligence but, rather, that the Town took and damaged her property for a public use. Therefore, the court did not err in overruling the demurrer.

III. <u>Mitigation Evidence</u>

The Town argues the court erred by precluding evidence of its affirmative defense that Simpson failed to mitigate damages. Specifically, the Town wanted to present evidence—at the just compensation hearing—of its "agreement and commitment to repairing the pipe and [Simpson's]

property to [her] specifications." The Town wanted to use this evidence in cross-examining Simpson's appraisal expert, Dennis Gruelle, and challenge his "assumption" that further inverse condemnation litigation was inevitable and diminished the property's market value.

We review evidentiary rulings for an abuse of discretion. *Comm'r of Highways v. Karverly, Inc.*, 295 Va. 380, 388 n.7 (2018).

In just compensation proceedings, "it is ordinarily the duty of owners of property taken by eminent domain proceedings to minimize their damages to the residue [as] far as they reasonably can." *Bradshaw v. State Hwy. Comm'r*, 210 Va. 66, 68 (1969). Evidence of damage mitigation, however, cannot be doubtful or speculative. *Id.* at 68-69.

The court did not abuse its discretion in its evidentiary rulings now challenged on appeal. First, the Town was able to introduce at the liability trial evidence of its "plan" to fix the pipe. This "plan," however, involved unilaterally presenting Simpson with a deed of gift, which she did not sign. The Town then mischaracterized this evidence when cross-examining Gruelle during the just compensation trial, stating that the Town had "not been allowed" to fix the pipe and Simpson "refused the Town's offer to replace and repair the pipe." Because the Town was able to introduce this evidence during the liability trial, and then only sought to introduce a mischaracterization of it at the just compensation trial, the court did not err in limiting the Town's cross-examination of Gruelle on this topic.

The Town was allowed significant leeway to ask these questions before Simpson objected. It cross-examined Gruelle about whether an offer to fix the pipe would affect his just compensation opinion. The Town asked if Gruelle considered that it "had offered and had allocated money" to fix the pipe. Gruelle testified that this information did not impact his opinion because it was outside the scope of the court's liability opinion and his role was to make an appraisal consistent with that order. Because the Town was able to attack the weight and credibility of Gruelle's opinion on this

issue, the court did not err in ultimately cutting off that line of questioning. The court recognized that the Town was able to make the point that Gruelle had not considered the offer to fix the pipe, before ultimately sustaining Simpson's objection to the Town continuing this line of questioning.

Furthermore, evidence of the Town's "offer" to fix the pipe and Simpson's refusal to sign the deed of gift without a lawyer constitutes evidence of settlement negotiations inadmissible at trial. Va. R. Evid. 2:408 (precluding "evidence of offers and responses concerning settlement or compromise of any claim which is disputed as to liability or amount"); *see Lyle, Siegel, Croshaw & Beale, P.C. v. Tidewater Cap. Corp.*, 249 Va. 426, 438 (1995) ("Generally, on public policy grounds, an offer to settle or compromise a disputed claim is inadmissible in evidence.").

Additionally, the Town's purported plan to fix the pipe was outside Simpson's control and therefore cannot show whether she took proper steps to mitigate damages. *See Town of Cape Charles v. Ballard Bros. Fish Co.*, 200 Va. 667, 673 (1959) (stating that an owner has a duty to mitigate damages "so far as he reasonably can, but he is not bound to enter upon a doubtful and speculative undertaking").

Simpson's conduct—not signing the deed of gift and not agreeing to the Town's settlement terms—did not constitute non-mitigation evidence. As the court noted, a property owner fails to mitigate damages by, for example, leaving furniture in the path of water infiltration. Such conduct would be within a property owner's control and not doubtful or speculative. *See Bradshaw*, 210 Va. at 68-69; *Town of Cape Charles*, 200 Va. at 673.[6]

For these reasons, we find no abuse of discretion in the court's evidentiary rulings the Town challenges on appeal.

---

[6] We note that, at the liability trial, Simpson testified that her efforts to limit her damages included making and laying sandbags, buying and positioning sump pumps and humidifiers, and using dam bags to absorb and divert stormwater from the pipe.

IV. <u>Reimbursement of Attorney Fees and Costs</u>

Under Code § 25.1-420, a court "shall determine and award" a plaintiff who successfully litigates an inverse condemnation proceeding "such sum as will, in the opinion of the court . . . *reimburse* such plaintiff for his reasonable costs, disbursements and expenses, including reasonable attorney, appraisal and engineering fees, *actually incurred* because of such proceeding." (Emphases added). The Town argues that the court erred in awarding Simpson her fees and costs under this statute because she had not yet paid any fees and costs. The Town contends that the terms "reimburse" and "actually incurred" require a prevailing plaintiff to have paid fees and costs as a prerequisite to recovering them under Code § 25.1-420.

An appellate court reviews questions of statutory interpretation de novo. *Stafford Cnty. v. D.R. Horton, Inc.*, 299 Va. 567, 574 (2021). "When the language of a statute is unambiguous, [appellate courts] are bound by the plain meaning of that language. And if the language of the statute is subject to more than one interpretation, [we] must apply the interpretation that will carry out the legislative intent behind the statute." *May v. R.A. Yancey Lumber Corp.*, 297 Va. 1, 14 (2019) (quoting *Cuccinelli v. Rector & Visitors of the Univ. of Va.*, 283 Va. 420, 425 (2012)). To ascertain its plain meaning, this Court "evaluates a statute in its entirety 'to place its terms in context' in order to 'interpret the several parts of a statute as a consistent and harmonious whole so as to effectuate the legislative goal.'" *Id.* (quoting *Cuccinelli*, 283 Va. at 425).

The term "incur" is defined as "[t]o suffer or bring on oneself (a liability or expense)." *Incur*, *Black's Law Dictionary* (11th ed. 2019).[7] Thus, to "incur" attorney fees and costs means to become legally responsible for them, not necessarily pay them out. *See Commonwealth v.*

---

[7] We rely on the edition of *Black's Law Dictionary* published at the time of the underlying litigation but note that all definitions referenced here are substantively equivalent in the current edition. *See Black's Law Dictionary* (12th ed. 2024) (making no substantive changes to the definitions of "incur," "reimbursement," and "indemnify").

*Puckett*, 302 Va. 455 (2023) (holding that a stabbing victim "incurred" medical expenses even though he did not pay them and affirming an order of restitution under Code § 19.2-305.1(B)); *AV Auto., LLC v. Gebreyessus*, 301 Va. 321, 328 & n.3 (2022) (rejecting argument that a party had not "incurred" attorney fees simply because another party was paying, as "the lawyers were not working for free" and the joint-defense agreement did "not make [the attorney fees] any less 'incurred'").

Moreover, we do not interpret the word "actually" in the statutory phrase "actually incurred" to require literal out-of-pocket payment of attorney fees before being eligible to recover them under Code § 25.1-420. Instead, the phrase "actually incurred" ensures that a plaintiff's claimed fees are directly linked to the condemnation action. The phrase defines the maximum amount of fees and costs that may be reasonably allowed, limiting recovery to the amount the landowner is obligated to pay its legal representative for the condemnation litigation. For example, the phrase precludes a court from inflating a condemnation award by ten percent to redress particularly egregious conduct by the government. By imposing this maximum, the statute compensates landowners for attorney fees and expenses incurred in the condemnation action while preserving the government treasury.

Here, Simpson "actually incurred" her legal fees, even though she had not yet paid them. Her attorneys were not working for free, and she had an express obligation to pay them. The timing of that payment does not determine whether she "actually incurred" the legal fees. They were "actually incurred" from the moment the lawyer performed work related to the inverse condemnation matter.

Additionally, the term "reimburse" in Code § 25.1-420 does not mandate that a plaintiff pay out attorney fees before recovering them. "Reimbursement" is defined as both "[r]epayment" and "[i]ndemnification." *Reimbursement*, *Black's Law Dictionary*, *supra*. Where

- 15 -

statutory language is subject to more than one interpretation, we must apply the interpretation that will carry out the legislative intent, and we place the terms in context to interpret the statute as a consistent and harmonious whole. *May*, 297 Va. at 14. Because the inverse condemnation statutes are remedial in nature, Code § 25.1-420 must be "liberally construed so that the purpose intended may be accomplished" and "read so as to promote the ability of the enactment to remedy the mischief at which it is directed." *Bd. of Supervisors of Richmond Cnty. v. Rhoads*, 294 Va. 43, 51 (2017) (quoting *Manu v. GEICO Cas. Co.*, 293 Va. 371, 389 (2017)).

Considering these principles, we conclude that the "indemnification" meaning of reimbursement is appropriate. First, this interpretation flows from reading "reimburse" in relation to "actually incurred"—a phrase that does not require actual payment of attorney fees. It would be incompatible and internally inconsistent to construe "reimburse" as requiring payment of attorney fees, when "actually incurred" does not.

Secondly, the "indemnification" meaning corresponds to the legislative purpose of Code § 25.1-420, which is to shift litigation expenses incurred by the property owner back to the government that took or damaged the private property without just compensation. Indeed, when a government has taken or damaged property without initiating formal condemnation proceedings, just compensation is not available unless or until the property owner initiates a declaratory judgment action under Code § 8.01-187—which typically requires hiring not only attorneys but also expert witnesses. By shifting these expenses back to the government, Code § 25.1-420 ensures that the prevailing property owner will be held harmless. The "indemnification" meaning of reimbursement effectuates this legislative purpose. *See Indemnify*, *Black's Law Dictionary*, *supra* (defining "indemnify" and to "hold harmless").[8]

---

[8] The Town's reliance on *Henrico v. City of Richmond*, 177 Va. 754 (1941), and *City of Colonial Heights v. Chesterfield County*, 196 Va. 155 (1954), is misplaced. Those cases interpret the term "reimbursement" in the context of statutes providing for a town's transition to

- 16 -

Inverse condemnation proceedings involve private citizens vindicating constitutional rights against the government, and Code § 25.1-420 reflects that these private citizens may not have independent funds to undertake the litigation. To be sure, a common meaning of "reimburse" is to pay back money that has been paid out. However, considering the legal definition, the other statutory language, and the legislative purpose of inverse condemnation, we construe Code § 25.1-420 as reimbursing a property owner's liability for legal expenses. Because we conclude that Code § 25.1-420 does not require a prevailing property owner to have paid fees and costs as a prerequisite to recovery, we affirm Simpson's award under the statute.

V. Appellate Attorney Fees

Finally, Simpson requests an award of her appellate attorney fees.

Code § 25.1-420 makes no distinction between attorney fees incurred in circuit court verses on appeal. It simply entitles a plaintiff who prevails in an inverse condemnation proceeding to a reimbursement of reasonable attorney fees "actually incurred because of such proceeding." Therefore, just as Code § 25.1-420 entitled Simpson to attorney fees below, so does it authorize an award of her reasonable appellate attorney fees "actually incurred" in this inverse condemnation appeal.

Rule 5A:30(b)(2)(B) provides that when a party has a statutory basis to request attorney fees, this Court can authorize the award and then remand to the circuit court for a determination

---

city status and the attendant financial obligations. These cases say nothing about how to interpret the term "reimbursement" in the fee-shifting statute at issue here.

We further note that Code § 25.1-420 is essentially verbatim 45 U.S.C. § 4654(c), the reimbursement statute applicable in inverse condemnation actions against the federal government. The federal statute has routinely been interpreted to allow reimbursement without proof that the prevailing plaintiff has first paid out attorney fees and costs. *See, e.g.*, *Preseault v. United States*, 52 Fed. Cl. 667 (2002) (stating that attorney fees are "incurred" where there is "an express or implied agreement that the fee award *will be paid* over to the legal representative" (emphasis added) (quoting *Phillips v. GSA*, 924 F.2d 1577, 1583 (Fed. Cir. 1991))).

of the proper amount, which "may include the fees incurred by such party in pursuing fees as awarded in the circuit court."

Having determined that Simpson is entitled to appellate attorney fees under Code § 25.1-420, we remand the matter to the circuit court for the limited purpose of determining and awarding the proper amount.

## CONCLUSION

For these reasons, we affirm the judgment below.  We remand to the circuit court solely for determination and award of the appropriate amount of appellate attorney fees.

*Affirmed and remanded.*